UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN DOE,

    Plaintiff,

v.                                     Case No. 6:18-cv-1069-Orl-37KRS

ROLLINS COLLEGE,

    Defendant.
_____

## **ORDER**

In this Title IX case, Defendant Rollins College ("**Rollins**") moves to dismiss Plaintiff John Doe's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 17 ("**Motion**").) Plaintiff responded. (Doc. 25.) On review, the Motion is due to be denied.

### I.    BACKGROUND

This case involves an accusation of sexual assault brought against Plaintiff, a former Rollins student, by Jane Roe, another Rollins student.[1] (Doc. 14, ¶¶ 10–14.) Months later, the accusation led to a Title IX investigation into Plaintiff headed by Rollins Title IX coordinator Oriana Jimenez ("**Jimenez**") and conducted by a retained investigator D.B. Wallace ("**Wallace**"). (*Id.* ¶¶ 15–20.) The investigation consisted of a series of interviews with Jane Roe and Plaintiff, plus twenty-two witnesses, none of whom had firsthand

---

[1] On motion, Plaintiff is currently proceeding by pseudonym. (*See* Docs. 2, 15, 18, 26, 28.)

knowledge of the incident. (*Id.* ¶¶ 21–45.) These witnesses told conflicting accounts, but the investigation at least revealed information and allegations that both Plaintiff and Jane Roe were victims of violations of Rollins' Title IX Sexual Misconduct Policy—not just Jane Roe. (*Id.* ¶¶ 21–45, 48.) Yet the investigative report penned by Wallace did not tell the whole story. (*Id.* ¶¶ 49–58.) Instead, it included a number of irrelevant, inflammatory, and conclusory statements about Plaintiff—crediting the testimony of Roe's witnesses over Plaintiff's while making untoward editorial comments about Plaintiff's prior sexual history. (*Id.* ¶¶ 49–58.) Further, even though the report acknowledged conflicting testimony and no additional eyewitnesses, Wallace provided a credibility assessment of both actors—Jane Roe was credible but Plaintiff was not. (*Id.* ¶¶ 55–58.)

Following the publication of the report, Plaintiff received a 27-page letter from Jimenez. (*Id.* ¶ 59.) Based on the report, which the letter essentially re-printed, Jimenez told Plaintiff that he had been found responsible for violating Rollins Sexual Misconduct Policy. (*Id.*) So Plaintiff received these sanctions: (1) a no contact order prohibiting contact with Jane Roe; (2) permanent separation from Rollins without the opportunity for readmission, noted on Plaintiff's transcript; and (3) prohibition from participation in commencement/graduation and any alumni events. (*Id.*) Plaintiff submitted an appeal, which Rollins denied. (*Id.* ¶¶ 60–61.)

From all this, Plaintiff contends that he has been denied the benefits of an education at his chosen school, his academic and professional reputations have been damaged, and his ability to enroll at institutions of higher learning and pursue a career may be affected. (*Id.* ¶ 62.) Plus, he has suffered significant economic and emotional

damages. (*Id.* ¶ 63.) Thus, Plaintiff instituted this action against Rollins and now brings two claims under Title IX and one claim for breach of contract based on Rollins handling of Jane Roe's complaint. (*Id.* ¶¶ 64–103.) Rollins moves to dismiss, claiming that the Amended Complaint fails to state a plausible claim, includes immaterial and irrelevant allegations, and constitutes a shotgun pleading. (Doc. 17.) With Plaintiff's Response (Doc. 25), the matter is ripe.

## II.   LEGAL STANDARDS

Under the minimum pleading requirements of the Federal Rules of Civil Procedure, plaintiffs must provide short and plain statements of their claims with simple and direct allegations set out in numbered paragraphs and distinct counts. *See* Fed. R. Civ. P. 8(a), 8(d), & 10(b). If a complaint does not comport with these minimum pleading requirements, if it is plainly barred, or if it otherwise fails to set forth a plausible claim, then it is subject to dismissal under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Plausible claims must be founded on sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 679. In assessing the sufficiency of factual content and the plausibility of a claim, courts draw on their "judicial experience and common sense" in considering: (1) the exhibits attached to the complaint; (2) matters that are subject to judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. *See id.*; *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215–16 (11th Cir. 2012); *Parham v. Seattle Serv. Bureau, Inc.*, 224 F. Supp. 3d 1268, 1271 (M.D. Fla. 2016).

Courts do not consider other matters outside the four corners of the complaint, and they must: (1) disregard conclusory allegations, bald legal assertions, and formulaic recitation of the elements of a claim; (2) accept the truth of well-pled factual allegations; and (3) view well-pled facts in the light most favorable to the plaintiff. *See Hayes v. U.S. Bank Nat'l Ass'n*, 648 F. App'x 883, 887 (11th Cir. 2016);[2] *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

### III. DISCUSSION

Plaintiff brings two Title IX claims for erroneous outcome and selective enforcement and a breach of contract claim for violating the Sexual Misconduct Policy based on Rollins' investigation and handling of this matter. (Doc. 14, ¶¶ 64–103.) The Court addresses the sufficiency of each claim below.

#### A. Title IX Claims

Among other things, Title IX mandates that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Based on this mandate, and by analogy to Title VII discrimination claims, victims of gender discrimination in disciplinary proceedings may bring an implied right of action against funding recipients.[3] *See Yusuf v. Vassar*

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

[3] Plaintiff alleges, and Rollins does not dispute that it is private university that receives federal funding. (Doc. 14, ¶¶ 5, 66–67.)

*College*, 35 F.3d 709, 714–15 (2d Cir. 1994) (holding that Title IX "bars the imposition of university discipline where gender is a motivating factor in the decision to discipline"); *see also Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1293 (11th Cir. 2007) (noting that the "Supreme Court has found an implied private right of action for individuals to enforce the mandates of Title IX").

Under Title IX, students "attacking a university disciplinary proceeding on grounds of gender bias" may assert two types of claims—"Erroneous Outcome" and "Selective Enforcement."[4] *See Yusuf*, 35 F.3d at 715. Both theories of liability require that gender bias must motivate the defendant's conduct. *Id.* Because Plaintiff brings both,[5] the Court addresses each.

    i.    **Erroneous outcome**

To state a plausible Erroneous Outcome claim, Plaintiff must allege: (1) "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding;" and (2) "a particularized allegation relating to a causal connection between the flawed outcome and gender bias," i.e., "particular circumstances

---

[4] As it stands, "[n]either the Supreme Court nor [the U.S. Court of Appeals for the Eleventh Circuit] has established a framework for analyzing Title IX challenges to university disciplinary proceedings." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1236 (11th Cir. 2018). But the Eleventh Circuit has recognized the impact of *Yusuf* in establishing a framework to analyze a Title IX erroneous outcome claim. *See id.* (citing *Yusuf*, 35 F.3d at 714–16; also citing *Doe v. Miami Univ.*, 882 F.3d 579, 589, 592–94 (6th Cir. 2018); *Plummer v. Univ. of Hous.*, 860 F.3d 767, 777–78 (5th Cir. 2017).

[5] The Court finds no merit to Rollins' argument that Plaintiff brings a "disparate impact" claim. (Doc. 17, p. 6.) Indeed, the Amended Complaint makes plain what Title IX claims Plaintiff is pursuing: erroneous outcome and selective enforcement. (*See* Doc. 14, ¶¶ 64–87.)

suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* At issue here is whether the Amended Complaint plausibly alleges this second prong. (*See* Doc. 17, pp. 5–10.)

Conclusory assertions concerning bias and discriminatory intent are insufficient to establish gender bias at the pleading stage. *See Yusuf*, 35 F.3d at 715.[6] Rather, plaintiffs must allege facts that support a plausible inference of bias and causation—for instance "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.*; *see also Doe v. Columbia Univ.*, 831 F.3d 46, 57–59 (2d Cir. 2016) (finding allegations that university and Title IX investigator faced mounting pressure from public criticism regarding its handling of sexual-assault investigations sufficient to support inference of gender bias).[7]

Like *Columbia*, the Amended Complaint first alleges that substantial criticism from the student body and public over how Rollins handled complaints by female students

---

[6] *See also Doe v. W. New Eng. Univ.*, 228 F. Supp. 3d 154, 159 (D. Mass. 2017) (dismissing complaint where conclusory allegations of gender bias were not supported by particular factual allegations).

[7] *See also Miami Univ.*, 882 F.3d at 593–94 (6th Cir. 2018) (finding statistical evidence showing pattern of gender-based decision-making and allegations of external pressure based on previous lawsuit against university created a plausible inference of intentional gender discrimination to withstand motion to dismiss). *But see Doe v. Cummins*, 662 F. App'x 437, 452–53 (6th Cir. 2016) (finding plaintiff's general allegations that the Department of Education's "Dear Colleague Letter" induced the university to discriminate against males to preserve federal funding insufficient to create a plausible claim of gender bias); *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1077–79 (D. Colo. 2017) (finding the plaintiff's allegations did not support a plausible inference of gender bias).

alleging sexual assault by male students motivated Rollins to accept the female student's accusation of sexual assault and reject the male student's claim of consent to protect Rollins' image. (*See* Doc. 14, ¶¶ 67–72.) Such "criticism" took the form of adverse news coverage, campus meetings or protests, and enforcement actions concerning Rollins. (*Id.* ¶ 68.) For example, the Amended Complaint points to a USA Today article that quoted a Rollins student describing a "Slut Walk" staged by female students in 2013–14 to protest people justifying rape based on dress, appearance, or intoxication. (*Id.* ¶ 68c. (citing Jonathan Swartz, *'Slut Shaming' Has More To Do with Social Standing than Sex*, *Study Says*, USA Today (June 3, 2014), https://www.usatoday.com/story/college/2014/06/03/slut-shaming-has-more-to-do-with-social-standing-than-sex-study-says/37391581/.) In 2015, Rollins' Director of Public Safety published an article in the Orlando Sentinel speaking to some issues, from the school's perspective, with abiding by federal and state requirements for sexual assault allegations. (*Id.* ¶ 68d. (citation not found).) And in September 2017, the student newspaper published a piece critiquing the Department of Education's recent changes to Title IX guidance that, from the author's perspective, would likely lead to increased underreporting of campus sexual assaults and deplete victims' rights. (*Id.* ¶ 68e. (citing Keila Makowski, *Protecting the Perpetrator: Title IX's New Guidelines*, The Sandspur (Sept. 28, 2017), http://www.thesandspur.org/protecting-perpetrator-title-ixs-new-guidelines/.)

Beyond this, the Amended Complaint details another Title IX case brought against Rollins alleging gender bias, *Mancini v. Rollins College*, Case No. 6:16-cv-2232-Orl-37-KRS,

2017 WL 3088102 (M.D. Fla. July 20, 2017) ("*Mancini*").[8] (Doc. 14, ¶¶ 69–70.) Plaintiff alleges that *Mancini* led to "additional criticism and news coverage of the Rollins Title IX process." (*Id.* ¶ 70.) One article highlighted how Rollins failed to provide accused students with a hearing or cross-examination tools and that subsequent litigation "has not done much to move the needle back towards a fairer process for students accused of sexual misconduct and other serious wrongdoing." (*Id.* ¶ 79a. (citing Samantha Harris, *Accused Student Says He Was Told to "Stay Quiet" About His Own Lack of Consent*, Reason (July 29, 2017), https://reason.com/archives/2017/07/29/accused-student-says-he-was-told-to-stay).) Another listed *Mancini*'s allegations of how Rollins displayed gender bias with a response from a Rollins spokesperson denying such unfairness or mistreatment. (*Id.* ¶ 70b. (citing Gabrielle Russon, *Rollins Student Sues School After Suspension in Sex Assault Case*, Orlando Sentinel (Dec. 29, 2016), https://www.orlandosentinel.com/features/education/os-rollins-lawsuit-sexual-assault-20161229-story.html).)

Altogether, these articles display a Rollins-specific concern with campus attitudes towards sexual assault, specifically victims being taken seriously, and administrative concern that mandated procedures weren't doing enough. Plaintiff contends that Rollins reacted to this criticism by favoring "the accusing female over the accused male," and this "biased stance" was evident in Rollins' handling of Jane Roe's complaint. (Doc. 14,

---

[8] The Court finds the Amended Complaint's references to *Mancini* clearly relevant and material in the context of the Erroneous Outcome analysis, so denies outright Rollins' embedded request to strike these references. (Doc. 17, pp. 9–10.)

¶¶ 72–74.) Because of this gender bias, Plaintiff asserts that Rollins' process of investigating and disciplining Plaintiff was flawed from the beginning, as the entire procedure slanted toward believing Jane Roe rather than uncovering the truth. (*Id.* ¶ 73.)

At this stage, the Court finds that Plaintiff has met his burden to plead gender bias. Rollins investigated Plaintiff's claims amidst a clamor of public and campus scrutiny over its treatment of sexual assault complaints by female students. Alone, allegations of external pressure fail to support an inference of gender discrimination. *See Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018). Yet Plaintiff has also pointed to the negative attention Rollins received after *Mancini* that caused it to buckle down in support of its policies, along with circumstantial evidence of bias in Plaintiff's specific proceeding. (Doc. 14, ¶¶ 70–73.) For example, the investigative report credited the testimony of witnesses who were friends or sorority sisters of Jane Roe while rejecting testimony from friends or fraternity brothers of Plaintiff's—based, in part, on the male witnesses' fraternity associations without making the same leap about the female witnesses' sorority associations. (*Id.* ¶ 58.) The report also excused any inconsistencies in Jane Roe's account concerning whether she verbalized consent but entirely disregarded Plaintiff's assessment of consent on account of Plaintiff's prior sexual history, which Plaintiff contends should not have been considered. (*Id.* ¶¶ 55–57.)

Thus, taking Plaintiff's allegations of external pressure from increased public scrutiny with the *Mancini* litigation and the particular circumstances of Plaintiff, the Court finds Plaintiff's claim plausible. At this pleading stage, the Court construes all allegations in Plaintiff's favor, and Plaintiff's claim that Rollins acted out of gender bias

is plausible. Discovery may reveal differently, but Plaintiff has sufficiently pleaded circumstantial evidence of gender discrimination. *See Baum*, 903 F.3d at 586–87; *Doe v. Miami Univ.*, 882 F.3d 579, 593–94 (6th Cir. 2018). The Motion is therefore denied as to this claim.

### ii. Selective enforcement

To state a Selective Enforcement claim, Plaintiff must allege sufficient facts to permit the plausible inference that "a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *See Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016); *Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003) ("To support a selective enforcement claim," the male plaintiff must allege "that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University"). To that end, Plaintiff points to Rollins' treatment of Jane Roe—she was a female student "in circumstances sufficiently similar to John Doe's and was treated more favorably by Rollins." (Doc. 14, ¶ 82a.) Specifically, "Rollins received credible information that . . . John Doe engaged in sexual activity with Jane Roe while John Doe was intoxicated," and "that John Doe was the victim of retaliation during the pendency of the investigation," but Rollins "did not encourage [him] to file a complaint, consider the information, or otherwise investigate." (*Id.* ¶¶ 81a.–81b.) Further, on adjudicating Plaintiff guilty of violating the Sexual Misconduct Policy, Plaintiff contends that Rollins chose the severest form of penalties "due to [Plaintiff's] gender. (*Id.* ¶¶ 82a.–82b.)

At the motion to dismiss stage, the Court finds that Plaintiff's allegations plausibly

make out a selective enforcement claim against Rollins. As Plaintiff alleges, the information Rollins collected during the investigation could have equally supported disciplinary proceedings against Jane Roe for also violating the Sexual Misconduct Policy. (Doc. 14, ¶¶ 81–82.) Yet Rollins treated Jane Roe—a female student—differently. (*Id.*) Preferentially even, as Plaintiff alleges. (*Id.* ¶¶ 83–84.) Such allegations sufficiently support a selective enforcement claim against Rollins. *See, e.g.*, *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 223 (D. Mass. 2017) (allowing selective enforcement claim to proceed past the pleadings stage when college encouraged female student to pursue disciplinary proceedings against male when female may have initiated sexual activity while male student was intoxicated and incapable of consenting and plaintiff alleged enhanced severity of punishment due to his gender); *cf. Miami Univ.*, 882 F.3d at 596–97 (finding equal protection claim plausible with allegations that university pursued disciplinary action solely against male student in the face of evidence that both male and female student violated sexual misconduct policy because of his gender). Thus, the Motion is denied for this claim.

### B. Breach of Contract Claim

Last, the Court evaluates Plaintiff's breach of contract claim. (Doc. 14, ¶¶ 88–103.) Plaintiff contends that his enrollment at Rollins, payment of tuition and fees, and attendance gave rise to a relationship, contractual in nature. (*Id.* ¶ 89.) The terms of this contract were set forth in the student handbook and Rollins' policies and procedures, which incorporate the Sexual Misconduct Policy and accompanying Bill of Rights. (*Id.*; *see also* Docs. 1-2, 1-3.) Plaintiff thus points to various provisions of the Sexual Misconduct

Policy that Rollins allegedly violated in its handling and adjudication of Jane Roe's complaint (*see* Doc. 14, ¶ 99), including the guarantee of an outcome based on information that is "credible, relevant, based in fact, and without prejudice," without regard to any "irrelevant prior sexual history" (*id.* ¶¶ 99d.–99e.). Plaintiff also alleges that Rollins breached an implied covenant of good faith and fair dealing by failing to provide him "with an investigatory and adjudicatory process that was 'essentially fair.'" (*Id.* ¶ 100.) Specifically, Rollins used a biased investigator who assessed Jane Roe's account as credible over Plaintiff's, failed to provide Plaintiff the opportunity to cross-examine or otherwise question Jane Roe, reached the outcome without sufficient evidence, and conducted its investigation and adjudicatory process without complying with federal law and the Clery Act. (*Id.* ¶¶ 101a.–101d.; *see also* ¶¶ 102a.–102c.)

These allegations give rise to a plausible breach of contract claim. *See, e.g.*, *Doe v. Lynn Univ., Inc.*, 235 F. Supp. 3d 1336, 1342–43 (S.D. Fla. 2017) (denying motion to dismiss breach of contract and good faith and fair dealing claims based on defendant's deviation from procedures set out in defendant's published policies). Plaintiff has identified specific provisions of the Sexual Misconduct Policy that Rollins purportedly breached and facts alleging how the breach occurred. (Doc. 14, ¶¶ 99–103.) At the motion to dismiss stage, such suffices. *See Amherst*, 238 F. Supp. 3d at 215–20. Therefore, the Motion is denied as to this claim.[9]

---

[9] Having found each claim plausibly pled, the Court denies Rollins' embedded motion to strike and last-minute argument that the Amended Complaint fails to satisfy Rule 8. (Doc. 17, pp. 13–16.) Far from being unwieldy and containing anything irrelevant or immaterial, the Court finds that the Amended Complaint clearly and appropriately

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 17) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 16, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record

---

details the events giving rise to Plaintiff's claims.