**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| JOHN DOE, | Case No. 6:18-cv-01069-RBD-KRS |
| Plaintiff, | Judge: Dalton, Jr. |
| v. | PLAINTIFF'S MOTION TO COMPEL |
| ROLLINS COLLEGE | |
| Defendants | |

Pursuant to Fed. R. Civ. P. 37, Plaintiff John Doe, respectfully submits this Motion to Compel. Plaintiff seeks an order requiring Defendant Rollins College ("Rollins") to provide full response to an interrogatory and document request seeking discovery into prior sexual misconduct investigations and disciplinary actions by Rollins in order to evaluate if there has been a past pattern and practice of discrimination.

## MEMORANDUM

**FACTS**

Plaintiff is a former student at Rollins. (Am. Comp. ¶4.) Defendant Rollins is a private university. (Am. Comp. ¶5.) Plaintiff brings two Title IX claims for erroneous outcome and selective enforcement and a breach of contract claim for violating the Sexual Misconduct Policy based on Rollins' investigation and handling of this matter.

The Court is familiar with the facts as alleged in the Amended Complaint, having ruled on Rollins' Motion to Dismiss. *Doe v. Rollins College*, M.D.Fla. No. 6:18-cv-1069, 2019 U.S. Dist. LEXIS 7437 (Jan. 16, 2019).

1

**DISCOVERY REQUESTS AT ISSUE**

<u>Document Request No. 16</u>:

All documentation concerning any formal or informal complaints or reports of sexual misconduct made to Rollins College (including, but not limited to those received Rollins College personnel, campus, police, the Title IX Office, Equal Opportunity, housing, or those received elsewhere and then referred to Rollins College) or investigated/resolved by Rollins College from 2011 through 2018, including:

a. any written complaints or reports, and a any documents containing descriptions of any verbal complaints;

b. all investigative files, interview memoranda, witness statements, and related documents concerning any investigation of these complaints or reports;

c. any documents showing the steps of the investigation and the results of the investigation, including any correspondence, e-mails, and other documents concerning how Rollins College notified pertinent parties of the outcome of each investigation;

d. any documents, including student academic records, memoranda, e-mails, notes, or other documents, that discuss or relate to accommodations or interim measures provided to the complainant while the complaint was being investigated or after the investigation concluded;

e. any documents, including student discipline records, memoranda, e-mails, notes, or other documents, that discuss or relate to any disciplinary or other remedial action Rollins College took in response to each complaint or report

f. any documents that discuss or relate to: whether [Rollins] found that the complainant and/or other students were sexually harassed/assaulted; whether Rollins College found that any complaint was part of a larger pattern of similar complaints; and whether Rollins College made any conclusion about whether the complainant and/or other students were subject to a sexually hostile environment.

g. If not included in responses above, all communications, including letters, e-mails, notes, memoranda, reports, notices, or other communications sent or received by Rollins College faculty, staff, administration, and/or trustees from 2011-2018, that discuss, relate or refer to the complaints or reports identified under this request.

<u>Response to Document request No 16</u>:

**RESPONSE:**

As to Request No 16(a), Defendant will produce any written complaints or reports and/or documents containing descriptions of verbal complaints of sexual misconduct from the date of Plaintiff's enrollment through the date of this Response. To the extent Plaintiff seeks additional information, Defendant objects as overly broad and seeking information that is neither relevant (as required pursuant to Rule 26, Federal Rules of Civil Procedure) nor proportional to the needs of this case.

As to Request No 16(b), Defendant will produce the final investigation reports from investigations into complaints or reports of Sexual Misconduct from the date of Plaintiff's enrollment through the date of this Response. To the extent Plaintiff seeks additional information, Defendant objects as overly broad and seeking information that is neither relevant (as required pursuant to Rule 26, Federal Rules of Civil Procedure) nor proportional to the needs of this case.

As to Request No 16(c), Defendant will produce the final investigation reports and final outcome letters from investigations into complaints or reports of Sexual Misconduct from the date of Plaintiff's enrollment through the date of this Response. To the extent Plaintiff seeks additional information, Defendant objects as overly broad and seeking information that is neither relevant (as required pursuant to Rule 26, Federal Rules of Civil Procedure) nor proportional to the needs of this case.

Defendant objects to producing documents responsive to Request No. 16(d) as overly broad and seeking information that is neither relevant (as required pursuant to Rule 26, Federal Rules of Civil Procedure) nor proportional to the needs of this case. Accommodations and/or interim measure provided to complainants unrelated to the allegations of misconduct against Plaintiff is not relevant to the claims brought by the Plaintiff and not proportional to the needs of the case.

As to Request No 16(e), Defendant will produce the final outcome letters from investigations into complaints or reports of Sexual Misconduct from the date of Plaintiff's enrollment through the date of this Response. To the extent Plaintiff seeks additional information, Defendant objects as overly broad and seeking information that is neither relevant (as required pursuant to Rule 26, Federal Rules of Civil Procedure) nor proportional to the needs of this case.

Defendant objects to producing documents responsive to Request No. 16(f) as the request is as overly broad, vague, ambiguous and seeks information that is neither relevant (as required pursuant to Rule 26, Federal Rules of Civil Procedure) nor proportional to the needs of this case. Plaintiff's Amended Complaint does not contain allegations of a pattern and practice of discrimination. Moreover, this request refers to "Syracuse" and Defendant does not have possession, custody or control of such information.

Defendant objects to producing documents responsive to Request No. 16(g) as overly broad and seeking information that is neither relevant (as required pursuant to Rule 26, Federal Rules of Civil Procedure) nor proportional to the needs of this case.

Finally, as to Request No. 16(a)-(g), Defendant objects to producing information for any time period that predates Plaintiff's enrollment as overly broad.

<u>Interrogatory No. 6</u>:

 Identify all students who have been alleged to have engaged in Sexual Misconduct at Rollins College from 2011 through 2018. For each person identified:
  a. Describe the nature of the allegation;
  b. State the gender of the complainant and the respondent;
  c. Identify the complainant or alleged victim;
  d. Identify all documents concerning the allegation, including any investigative reports;
  e. Describe the results of any investigation and/or any appeal or hearing on the allegations;
  f. Describe any sanctions or discipline imposed on a student, including any interim sanctions imposed prior to the resolution of the matter; and
  g. Describe any accommodations or interim measures requested by and/or provided to the alleged victim.

<u>Response to Interrogatory No. 6</u>:[1]

 **<u>ANSWER</u>: See Defendant's response and objections to Request for Production No. 6. Moreover, Defendant objects to Interrogatory No. 6 as overly broad and seeking information that is neither relevant (as required pursuant to Rule 26, Federal Rules of Civil Procedure) nor proportional to the needs of this case. The foregoing requested information is not relevant to the claims made in this case and contains third parties' private and confidential information. Finally, Defendant objects to producing information for any time period that predates Plaintiff's enrollment because any request for such information is overly broad.**

**CONFERRAL BETWEEN PARTIES**

 The parties have engaged in substantial discussions about this issue, culminating in a series of correspondence in Mid-February. Prior to this correspondence, Plaintiff, in the spirit of compromise, had agreed to limit the tie frame of the discovery requests to when Plaintiff was actually enrolled at Rollins.

 On February 14, 2019, Counsel for Rollins confirmed that there were thirteen investigations into allegations of sexual misconduct while Plaintiff was enrolled at Rollins. (Attached as Exhibit A.) Counsel for Rollins indicated that Rollins would produce only the three investigations completed by the investigator in this case. Counsel for Plaintiff responded the same day that this appeared to be a

---

[1] While to Response to Interrogatory No. 6 indicates a reference to Document Request No. 6, this is, in fact, a reference to Document request No. 16

new objection on relevance by Rollins and that "production of ten investigatory files would [not] be unduly burdensome, especially since both sides have been accommodating on schedules." (Attached as Exhibit B.)

On February 15, 2019, Counsel for Rollins indicated that records would not be produced for three reasons, some of which were not expressed in the original objections: (i) production would be unduly burdensome; (ii) production would involve confidential materials; and (iii) matters not investigated by the same outside investigator were not relevant. (Attached as Exhibit C.) Counsel for Rollins requested "a rationale" for the production of the additional records. (*Id.*) Counsel for Plaintiff responded the same day. (Attached as Exhibit D.) Counsel provided significant authority for the proposition that "Courts have assumed that plaintiffs in Title IX cases would be entitled discovery into the type of evidence of bias that can be found in the full investigation files."

On February 21, 2019 Counsel for Rollins responded. Counsel for Rollins did not respond to any of the authority provided by Counsel for Plaintiff. (Attached as Exhibit E.) Instead, Counsel merely reiterated: "Defendant's position is that the other ten cases are not reasonably connected to the issues… and should not be produced."

This Motion followed.

**ARGUMENT**

**A.     Standard**

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). As a general starting principal in evaluating these requests, the Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). This Court has explained that discovery under Rile 26 "is to be broadly and liberally interpreted." *Parkervision, Inc. v. Qualcomm Inc.*, M.D. Fla. No. 3:11-cv-719-J-37, 2013 U.S. Dist. LEXIS 99787 (July 17, 2013).

**B.     The Legal Theory Behind The Discovery Requested**

Plaintiff is asserting that the school's disciplinary proceedings produced an erroneous outcome in violation of Title IX as described in *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). This Court followed the *Yusuf* standard in deciding the Motion to Dismiss. 2019 U.S. Dist. LEXIS 7437, at *6 n. 4, *citing Doe v. Valencia College*, 903 F.3d 1220, 1236 (11th Cir. 2018) ("we will assume for present purposes that a student can show a violation of Title IX by satisfying the "erroneous outcome" test applied by the Second Circuit in *Yusuf*"). In an erroneous outcome case, "the claim is that the plaintiff was innocent and wrongly found to have committed an offense" on the basis of gender bias. *Yusuf*, 35 F.3d at 715. To state a claim for erroneous outcome discrimination, a plaintiff must show (1) "a

procedurally or otherwise flawed proceeding"; (2) "that has led to an adverse and erroneous outcome"; and (3) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."

The focus of the discovery sought through this Motion is on the second element: the causal connection between the flawed outcome and gender bias. To establish a gender discrimination claim under Title IX, Plaintiff must show that Rollins discriminated against him because of sex, the discrimination was intentional, and the discrimination was a substantial or motivating factor of the defendant's actions. *Doe v. Lynn Univ., Inc.*, 224 F. Supp. 3d 1288, 1292 (S.D.Fla. 2016); *Doe v. Univ. of S. Fla. Bd. Of Trs.*, No. 8:15-cv-682-T-30EAJ, 2015 U.S. Dist. LEXIS 69804, at *4 (M.D. Fla. May 29, 2015).

The principles of Title VII claims apply in interpreting Title IX claims by students. In *Yusuf,* the Second Circuit relied on Title VII law in analyzing claims by students under Title IX. 35 F.3d at 715. Other Circuits also follow this approach. *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172 (10th Cir. 2001) ("Title IX discrimination claims under the same legal analysis as Title VII claims."); *Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 865 n.4 (8th Cir. 2011); *Torres v. Pisano*, 116 F.3d 625, 630 n.3 (2d Cir. 1997) ("We have held that Title VII principles apply in interpreting Title IX."); *Preston v. Virginia ex rel. New River Cmty. College*, 31 F.3d 203, 206 (4th Cir. 1994) ("We agree that Title VII, and the judicial interpretations of it, provide a persuasive body of standards to which we may look in shaping the contours of a private right of action under Title IX."); *Mallory v. Ohio Univ.*, 76 F.App'x 634, 638 (6th Cir. 2003) (observing that *Yusuf* "analogiz[ed] from Title VII law"). In this Circuit, the court in *Lynn Univ.*, after reviewing the origin of this approach, concluded that the Second Circuit's reliance on Title VII law in *Yusuf* was "supported" and, as a result, held it was appropriate for a plaintiff to "turn to the sorts of factual allegations that suffice to support Title VII claims when assessing claims brought under Title IX." 224 F. Supp. 3d at 1292.

**C.      This Discovery Sought is Relevant**

Defendants have objected on relevancy grounds.  In an effort to compromise, Plaintiff has agreed to limit the scope of discovery sought to the time when Plaintiff was enrolled at Rollins. Counsel for Rollins has represented that there was a total of 13 investigations during this time.  Rollins has agreed to produce 3 of these investigations; Rollins refuses to produce the ten additional investigations on the grounds that the investigations conducted by different investigators are not relevant.[2]  (*See* Feb. 14, 2019 Letter from Def. Counsel.)

**1.      The Title VII Example**

Rollins' relevance objection would not be a valid objection in a Title VII discrimination case.

This Court has observed, "courts often apply more liberal discovery rules in… civil rights cases than in typical civil cases." *Serina v. Albertson's, Inc.*, 128 F.R.D. 290, 292 (M.D.Fla.1989), *citing Sweat v. Miller Brewing Co.,* 708 F.2d 655, 658 (11th Cir. 1983) (company-wide statistical information concerning company's general practices regarding minority employment discoverable to show pretext in individual disparate treatment case).  *See also  Adkins v. Christie*, 488 F.3d 1324, 1328 (11th Cir. 2007)( the "normally predominant principle of utilizing all rational means for ascertaining truth... is at its strongest in civil-rights cases" (citation omitted)).  In particular, the Eleventh Circuit has explained that plaintiffs in discrimination cases should be permitted to pursue discovery designed to "yield circumstantial evidence of intentional discrimination" because direct evidence of discrimination is often difficult to find.  *Castillo v. Allegro Resort Marketing*, 603 F. App'x 913, 917-19 (11th Cir. 2015). *Cf.*

---

[2] Rollins never explained, during Rule 37 Conferences, why this makes a difference.  The Amended Complaint alleges bias on the part of Rollins. (*See e.g.* Amended Complaint ¶¶ 68-71.) The Amended Complaint suggests bias in both the investigation and adjudication process.  (*See e.g.* Amended Complaint ¶73(a) ("Particular circumstances suggest that gender bias was a motivating factor behind the erroneous findings and the decision to impose discipline upon John Doe.").)  The Amended Complaint also alleges a significant and active role by other Rollins administrators, including the Title IX Coordinator, in the initiation of cases, appeals, and sanctioning decisions (*See e.g.* Amended Complaint ^¶¶15, 59, 95.)

*Chernys v. Std. Pacific of S. Florida, G.P. Inc.,* S.D.Fla. No. 07-21605-CIV, 2010 U.S. Dist. LEXIS 153555, at *15 (Feb. 10, 2010) (observing that cases "involving direct evidence" of discrimination "are rare"); *Parris v. Keystone Foods, LLC*, 959 F.Supp.2d 1291, 1303 (N.D.Ala.2013)("Direct evidence of discriminatory intent is rare.").

The Eleventh Circuit has explained that in Title VII cases, plaintiffs are they were able to take advantage of "broad access to [a defendant's] records in an effort to document their claims." *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660, n. 19 (11th Cir.1993), *quoting Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989). This Court has observed that, in a discrimination case, "circumstantial and statistical evidence regarding [d]efendants' treatment of" other persons "similarly situated" to a plaintiff is relevant. *Sears v. Carrier Corp.*, M.D.Fla. No. 3:07-cv-5-J-25JRK, 2008 U.S. Dist. LEXIS 128019, at *6 (July 15, 2008).

Relying on these precedents, courts in the Circuit have historically permitted broad Title VII discovery into past practices in order to evaluate if there has been a past pattern and practice of discrimination. In one case, the court granted a motion to compel permitting a plaintiff to discover how other "employees were disciplined after they committed the same or similar infraction as Plaintiff." *Soto v. Genentech, Inc.*, S.D.Fla. No. 08-60331-CIV, 2008 U.S. Dist. LEXIS 88935, at *21 (Oct. 17, 2008). The court in *Soto* explained a plaintiff was "entitled to discover information about employees who allegedly violated [similar] regulations and rules," and explained that whether such information ultimately probative of discrimination was a question separate from discovery: "Once the discovery is provided, Plaintiff will be able to argue that certain violations are sufficiently similar to be considered; and, Defendant will be able to argue that the evidence is irrelevant." 2008 U.S. Dist. LEXIS 88935, at *21. Another court explained that this broad discovery is necessary because "significant reliance must be placed upon empirical data showing [a]… historical pattern of conduct in proving whether [a defendant] has discriminated against particular individuals…" *Ylla v. Delta Air*

*Lines, Inc.*, N.D.Ga. No. 76-1503A, 1977 U.S. Dist. LEXIS 17397, at *25-26 (Feb. 11, 1977). In other

cases, courts in this Circuit have permitted board discovery into disciplinary files of other employees.

In one case, the court explicitly observed, "information as to discipline of other employees may lead

to the discovery of admissible evidence." *Cherenfant v. Nationwide Credit, Inc.*, S.D.Fla. No. 03-60655-

CIV-MARRA/SELTZER, 2004 U.S. Dist. LEXIS 30458, at *28 (May 7, 2004).

### 2. Discovery Is Broad In Other Student Title IX Cases

Rollin's relevance objection based on the identity of the investigator is not well taken in the

specific context of Title IX erroneous outcome cases.

This Court, in denying the Motion to Dismiss, followed the Second Circuit's decisions in *Yusuf*

and *Doe v. Columbia Univ.*, *supra* The *Yusuf* court explained that allegations of gender discrimination

"might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent

university officials, *or patterns of decision-making that also tend to show the influence of gender.*" 35 F.3d at 715

(emphasis supplied). This list in *Yusuf* is not intended to be exhaustive. More importantly, a court in

a Title IX erroneous outcome case should not examine any particular decision in a vacuum, but needs

to evaluate the decision in the context of other actions in the institution.[3] Just focusing on the facts

---

[3] Courts generally refuse to limit discovery in discrimination cases to the specific time period in which a violation is alleged to have occurred. Rather, courts have held that the discovery of information both before and after the alleged discriminatory action at issue may be relevant and/or discoverable. *See, e.g., Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84-85 (2d Cir. 1990) (recognizing that "employers rarely leave a paper trail--or 'smoking gun'). Other courts have observed, "such broad discovery may lead to the discovery of admissible evidence relating to a pattern or practice of discrimination or to the motive and intent of the" decision maker. *Epling v. UCB Films, Inc.*, D.Kan. No: 98-4226-SAC, 2000 U.S. Dist. LEXIS 21818, at *20 (Aug. 7, 2000). *See also Rivera v. DHL Global Forwarding*, 272 F.R.D. 50, 54-55 (D.P.R.2011) (observing that courts have generally found requests about similarly situated persons valid); *Chamberlain v. Farmington Sav. Bank*, 247 F.R.D. 288, 291 (D. Conn. 2007) (information about discipline, termination or resignation of other management level employees during the preceding five years before plaintiff's termination was discoverable); *Mitchell v. Fishbein*, 227 F.R.D. 239, 249 (S.D.N.Y. 2005) (although "evidence establishing a general pattern of discriminatory treatment by an employer will not be determinative of the discrimination issue, it is nevertheless relevant and therefore discoverable").

of this case, the outside investigator did not act alone but worked with the Title IX coordinator and others at the school. The Title IX coordinator for the school was heavily involved and issued the final determination of discipline. (Amended Complaint ¶59.) Another school official reviewed his appeal. (Amended Complaint ¶61.) There is no reason to limit discovery to just her investigations.

The limitation sought by Rollins is not supported by the law. In *Columbia*, the Second Circuit reaffirmed *Yusuf*. In evaluating whether a decision was motivated by gender bias, the *Columbia* court did not limit evidence of bias to the "decision-makers" but, instead, suggested that institutional bias could affect the entire process, leading the decision-makers to reach a different result.

> The Complaint alleges that, having been severely criticized in the student body and in the public press for toleration of sexual assault of female students, Columbia was motivated in this instance to accept the female's accusation of sexual assault and reject the male's claim of consent, so as to show the student body and the public that the University is serious about protecting female students from sexual assault by male students—especially varsity athletes. There is nothing implausible or unreasonable about the Complaint's suggested inference that the panel adopted a biased stance in favor of the accusing female and against the defending male varsity athlete in order to avoid further fanning the criticisms that Columbia turned a blind eye to such assaults.

831 F.3d at 68-58. The court went further, suggesting the possible bias by non-decisionmakers is relevant if those with bias "had significant influence" over the decision. The court, again relying on Title VII precedents, observed that a school could be liable for "discrimination practiced by an employee endowed by the institution with supervisory authority or institutional influence in recommending and thus influencing the adverse action by a non-biased decision-maker." 831 F.3d at 58-59.

In order to develop his case, Plaintiff seeks details of the allegations, the details of the investigative and adjudicative steps taken by the school, the accommodations or other benefits provided to the complainants, and the resolution of the matter. In particular, the manner in which the school handled the investigations – and not just the basic information provided in the summary document – is properly within the scope of permissible discovery. In a recent decision, the Sixth

11

Circuit held that the causal element of an erroneous outcome claim could be established by evidence concerning how the school handled other cases involving allegations of sexual assault. *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018). Of significance to this case, the Sixth Circuit in *Miami Univ.* suggested that an inference of gender discrimination could be shown at trial not only from the type of "statistical evidence" that could be gleaned from a summary document, but also from broad discovery into the facts and circumstances of the other cases in order to determine whether "the alleged patterns of gender-based decision-making, . . . in fact, exist." 882 F.3d at 594.

In this case, Plaintiff has asserted a selective enforcement claim based on the act that some of the information Rollins collected during the investigation could have equally supported disciplinary proceedings against Jane Roe for also violating the Sexual Misconduct Policy. *See Doe v. Rollins College*, 2019 U.S. Dist. LEXIS 7437, at *13, *citing inter alia Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003) ("To support a selective enforcement claim," the male plaintiff must allege "that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University"). This information was shared with others in the Rollins administration, including the Title IX Coordinator. The records sought in discovery might demonstrate other situations where both the male and female students were intoxicated, or that the complainant also committed misconduct, but the school chose only to investigate the male student. This was the situation in the *Miami Univ.* case. In that case, the court observed that evidence in the investigatory file that both students committed misconduct, but the school only investigated the male student, could support on inference that the school "impermissibly makes decisions on the basis of a student's gender." 882 F.3d at 593-594.

This Court explained in denying the Motion to Dismiss, "Plaintiff asserts that Rollins' process of investigating and disciplining Plaintiff was flawed from the beginning, as the entire procedure slanted toward believing Jane Roe rather than uncovering the truth." 2019 U.S. Dist. LEXIS 7437, at *10. Review of other investigatory files might disclose similar flaws, such as the failure to properly

consider evidence of accommodations provided to the complainant, or other evidence beneficial to the accused.[4]  As with the decision in *Yusuf*, this is not an exhaustive list.  Additional evidence found in the details of the investigation which could show a pattern of biased decision-making include: (i) the timing of investigative actions, especially in regards to requests from the media and/or other litigation; (ii) the investigatory techniques used and the types of evidence gathered or ignored; and (iii) whether there was any coercion or encouragement of reluctant victims.

Courts have assumed that plaintiffs in Title IX erroneous outcome cases would be entitled to discovery into the type of evidence of bias that can be found in the full investigation files and not in a summary document.  In *Doe v. Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799 (E.D.Pa. 2017), the plaintiff asserted an erroneous outcome claim and explicitly sought discovery "designed to develop factual allegations to support his claim that females charged with misconduct are treated less severely than he was".  270 F.Supp. 3d at 824.[5]  The court observed that plaintiff was proceeding on a Title IX claim based, in part, on an erroneous outcome theory and permitted the plaintiff "to conduct discovery to ascertain whether, in fact, there are facts to support his allegations . . . that similarly situated females are treated more favorably than he was."  270 F.Supp.3d at 824-25.  Other courts have made the same observation.  *See Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 190 (D.R.I.2016) (noting that discovery after

---

[4] This was the situation in *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:15-cv-2830, 2018 U.S. Dist. LEXIS 68364 (Apr. 24, 2018).  In that case, the accused student was not informed that the alleged victim was permitted to re-start medical school as a result of her claim to have been a victim of sexual assault. The court observed that this was evidence that "Universities have perhaps, in their zeal to end the scourge of campus sexual assaults, turned a blind eye to the rights of accused students."  2018 U.S. Dist. LEXIS 68364, at *30.

[5] The *Univ. of Pennsylvania* court discussed discovery in the context of a selective enforcement claim, but the court seemed to conflate the two theories for purposes of the discovery question.  The allegations considered are actually couched in terms of a classic erroneous outcome claim. 270 F. Supp. 3d at  824 ("The Complaint alleges, however, based upon information and belief, that 'statistics . . . will show a pattern of . . . selective enforcement based on gender.'").

denial of motion to dismiss would answer "Whether the evidence of more recent cases will substantiate [plaintiff's] claim of a pattern . . ."); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 769 (D.Md. 2015) (observing that plaintiff in erroneous outcome case may be "able to uncover discoverable and admissible evidence that… gender was a motivating factor behind [a school's] allegedly flawed disciplinary procedures and wrongful conclusions").

The ability of a plaintiff in an erroneous outcome Title IX case to obtain the discovery sought in this case was precisely addressed in a different case involving The Ohio State University. *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:15-cv-2830, 2015 U.S. Dist. LEXIS 141218 (Oct. 16, 2015). In that case, the plaintiff sought discovery of all of the schools "sexual misconduct investigation records from 2010 to [2015]." The school objected that the request for these records was "too broad" and that the student "lack[ed] good cause to obtain access to such records." The court concluded that the school's objections were "largely without merit." The court said the production of the entire disciplinary files should be made:

> [The student's] Title IX claim alone presents good cause for such . . . discovery of at least the records of sexual misconduct proceedings from 2010 to the present . . . Stated simply, if The Ohio State University has a pattern and practice that treats males unfairly in sexual misconduct investigations, then the school has a significant problem in this litigation. Determining whether such a problem exists necessitates looking at the data *and the context surrounding that data*. Given such inarguable relevance, the Court finds it remarkable that the OSU Defendants would argue that good cause is lacking.

2015 U.S. Dist. LEXIS 141218, at *5-6. In a later case involving a different plaintiff, The Ohio State University conceded that such files were relevant to a Title IX claim. *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:16-cv-171, 2018 U.S. Dist. LEXIS 176752, at *12 (Oct. 15, 2018) ("*Ohio State II*").

### 3. The Objections by Rollins Are Not Well Taken

The fact that the discovery sought may contain confidential material does not affect the Rule 26 analysis. The parties have agreed to a Confidentiality Agreement and Plaintiff anticipates that the information can be produced as confidential under that Agreement. *Cf. Chembio Diagnostic Sys. v. Saliva*

*Diagnostic Sys.,* 236 F.R.D. 129, 137 (E.D.N.Y.2006) (ordering discovery where party "failed to demonstrate why the protective order in place is insufficient to protect the sensitive nature of the discovery"). Alternatively, Plaintiff does not object to the redaction of student names in the disciplinary files as long as gender is identified.

The Complaint by Rollins that production would be unduly burdensome is not well taken. Although broader discovery is justified under *Yusuf*, Plaintiff has agreed to a temporal time limitation as a good faith offer to limit the burden on Rollins. If Rollins chooses to redact student names, assuming that the reports are similar to the reports in this case, the burden of redaction of student names will be minimal. This is because, in the report for Plaintiff, names are rarely used. Instead, John Doe is common referred to as "Responding Party," the alleged victim as "Reporting Part," and witnesses are identified by number (*i.e.* "Witness 1," Witness 2" etc…). Moreover, as Rollins notes in its own Motion to Compel, the demand in this case is in excess of $500,000 and this case presents "serious[ ] allegations." (Docket#40 at 10.) In *Ohio State II*, the court over-ruled an objection by a school that a school producing records from other investigations was unduly burdensome. 2018 U.S. Dist. LEXIS 176752, at *13-14. The court in that case found that the production of thirty-five investigative files (three and one-half times the number at issue in this case) was not unduly burdensome.

The document requests and interrogatories propounded by Plaintiff are modeled (in both scope and language) after the discovery sought by the Department of Education, Office of Civil Rights ("OCR"), in conducting investigations into whether schools have violated Title IX by failing to promptly and equitably respond to complaints of sexual misconduct. A sample data request from OCR is attached as Exhibit F. The discovery sought here is almost verbatim Request No. 8 from OCR. This data request illustrates that Plaintiff is not on a "fishing expedition" but is seeking precisely

the sort of information the Department of Education seeks to determine if a school has complied with its obligations under Title IX.

**D.      The Court Should Award Costs**

Rule 37(a) states that if a motion for an order compelling discovery is granted, the court must, after giving an opportunity to be heard, require the party whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  This award is required unless the Court finds, *inter alia,* that the respondent's conduct was substantially justified or other circumstances make an award of expenses unjust. *See* Fed. R. Civ. Proc. 37(a)(5)(A).

In this case, while there was substantial conferral between the parties, an award of costs is justified because Rollins never provided any substantive basis for refusing to provide the discovery. At no point, for example, in any of the objections or correspondence does Rollins refer to any cases or other authority to support its position.  Most telling is the final letter from Rollins' counsel.  Counsel for Rollins demanded a "rationale" for the Plaintiff's position.  (Exhibit C.)  Counsel for Plaintiff responded with a substantive response citing relevant caselaw.  (Exhibit D.)  Instead of engaging substantively or seeking contrary authority, Rollins simply dug in its heels and repeated its "position" that the discovery would not be provided.  (Exhibit E.)  This is not a good faith conferral.  Rule 37 obligates litigants to make an honest effort to come to terms; they are required to try to reach an agreement in good faith in accordance with applicable precedents. "Good faith" under Rule 37 means more than merely, like Rollins did in this case, going through the motions of negotiating, as the correspondence indicates a predetermined resolve not to budge from an initial position.

**CONCLUSION**

The Motion to Compel should be granted. This Court should issue an Order requiring Rollins to provide full response to an interrogatory and document request seeking discovery into prior sexual misconduct investigations and disciplinary actions by Rollins. Further, pursuant to Fed. R. Civ. P. 37, the Court should award to Plaintiff the costs incurred in bringing this Motion.

Respectfully submitted,

/s/ Joshua A. Engel
Carlos J. Burruezo, Esq. (#843458)
carlos@burruezolaw.com
Bertha L. Burruezo, Esq. (#596973)
bertha@burruezolaw.com
941 Lake Baldwin Lane, Suite 102
Orlando, Florida 32814
Office: 407.754.2904
Facsimile: 407.754.2905

JOSHUA ADAM ENGEL (Ohio 0075769)
ANNE TAMASHASKY (Ohio 0064393)
*Special Admission*
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com
tamashasky@engelandmartin.com

**CERTIFICATION OF COUNSEL**

Pursuant to Local Rule 3.01(g) and Fed R. Civ. P. 37(a)(1), the undersigned counsel certifies that before filing this Motion counsel conferred with counsel for the opposing party in a good faith by written correspondence and phone in an effort to resolve the issues raised by the motion and obtain the relief sought without court action.  Counsel for the opposing party did not agree on the resolution of the motion.

_____/s/ Joshua Engel _____
Joshua Adam Engel (Ohio No. 0075769)
(*pro hac vice*)

**CERTIFICATE OF SERVICE**

This certifies that the foregoing was filed electronically on February 22, 2019.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

_____/s/ Joshua Engel _____
Joshua Adam Engel (Ohio No. 0075769)
(*pro hac vice*)