# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JOHN DOE, | Case No. 6:18-cv-01069-RBD-KRS |
| Plaintiff, | Judge: Dalton, Jr. |
| v. | PLAINTIFF'S MOTION TO COMPEL MATERIALS WITHHELD ON THE BASIS OF ATTORNEY-CLEINT COMMUNICATION |
| ROLLINS COLLEGE | |
| Defendants | |

Pursuant to Fed. R. Civ. P. 37, Plaintiff John Doe, respectfully submits this Motion to Compel. Plaintiff seeks an order requiring Defendant Rollins College ("Rollins") to provide certain documents and deposition testimony withheld on the basis of attorney-client privilege. These documents concern communications between counsel and an independent investigator who was not a Rollins employee. Rollins cannot meet its burden of establishing the privilege for two reasons: (i) the communications were disclosed to a third party; and (ii) any privilege has been waived.

## MEMORANDUM

**FACTS**

Plaintiff is a former student at Rollins. (Am. Comp. ¶4.) Defendant Rollins is a private university. (Am. Comp. ¶5.) Plaintiff brings two Title IX claims for erroneous outcome and selective enforcement and a breach of contract claim for violating the Sexual Misconduct Policy based on Rollins' investigation and handling of this matter.

The Court is familiar with the basic facts as alleged in the Amended Complaint, having ruled on Rollins' Motion to Dismiss. *Doe v. Rollins College*, M.D.Fla. No. 6:18-cv-1069, 2019 U.S. Dist. LEXIS 7437 (Jan. 16, 2019).

This Motion concerns correspondence and communications between three people:

1

1. Oriana Guevara, f/k/a Oriana Jimenez ("Jimenez"). Jimenez is the Rollins Title IX Coordinator responsible for the implementation and enforcement of the Rollins Sexual Misconduct Policy.

2. Mark Alexander. Mr. Alexander is outside counsel for Rollins.

3. Deena Wallace. Wallace is an attorney who was retained as an outside investigator. (There is no claim that Wallace was acting as an attorney in this matter.)

**DISCOVERY REQUESTS AT ISSUE**

**A. The Significance and Relevance Of The Request Discovery**

The requested discovery concerns an aspect of the investigation of John Doe conducted by Wallace. As part of her investigation, Wallace made inquiries into John Doe's prior sexual history. In particular, Wallace asked witnesses about all of John Doe's prior girlfriend's and inquired into rumors of prior misconduct by John Doe involving three other witnesses, identified as "Witness 8," Witness 10, and "Witness 19."[1] John Doe was questioned by Wallace about these allegations; notably, John Doe was not informed prior to his interview that these additional allegations would be the subject of his interrogation.

The Amended Complaint alleges that the consideration of John Doe's prior sexual history was a violation of the Rollins policies, which are enforceable agreements between John Doe and Rollins. The Rollins sexual misconduct policy, attached to the Original Complaint as Exhibit A, provides that the prior sexual history of an accused student responding party "may be relevant where there is evidence of a pattern of misconduct." The Rollins "Reporting Party Bill of Rights," attached to the

---

[1] Wallace relied on these allegations of wrongdoing by John Doe in reaching the determination of responsibility in her report. *However,* all three of the alleged additional victims were unable to corroborate the allegations of sexual misconduct by John Doe.

Witness 8 told Wallace that she "made out with" John Doe but that they did not have sex. She further told Wallace, that she "didn't have memory of what happened." Witness 10 told Wallace that she never explicitly told anyone she felt she had been assaulted by John Doe. Witness 19 told Wallace that she did not did not remember the alleged encounter with John Doe. Wallace was aware of the denials prior to her interrogation of John Doe.

2

Original Complaint as Exhibit B, provides that accused students have the right "not have irrelevant prior sexual history considered as information in the investigation." In Paragraph 101 of the Amended Complaint, Plaintiff alleges that Rollins breached these contractual guarantees by considering John Doe's prior sexual history. In denying the Motion to Dismiss, this Court observed that Plaintiff "points to various provisions of the Sexual Misconduct Policy that Rollins allegedly violated in its handling and adjudication of Jane Roe's complaint…, including the guarantee of an outcome… without regard to any 'irrelevant prior sexual history.'" *Doe v. Rollins College*, 352 F. Supp. 3d 1205, 1212 (M.D.Fla. 2019).

Based on context and the limited information provided during depositions, Plaintiff believes that the material being disputed by this Motion concerns communications with counsel about the following issues: (i) whether Wallace could properly inquire into the allegations of past misconduct by John Doe; and (ii) whether John Doe should be informed prior to his interrogation by Wallace that he would be asked about these allegations. These issues are central to this litigation.

**B.  The Specific Discovery At Issue**

Defendant has asserted attorney client privilege over the following documents:

- Undated Notes from Wallace (Doc#4057)
- November 30, 2017 Email string from Alexander to Jimenez, Wallace, and another Rollins employee (Doc#3457-3459)
- November 30, 2017 Email string from Jimenez to Alexander, Wallace, and another Rollins employee string from Alexander to Jimenez, Wallace, and another Rollins employee (Doc#3450)
- December 21, 2017 Email String (Doc#3478-3479)

A copy of defendant's privilege log is attached as Exhibit A. The redacted documents in possession of Plaintiff at issue are attached as Exhibit B.

Defendant also asserted attorney-client privilege over testimony regarding communications between counsel and Ms. Wallace during depositions. For example, Ms. Guevara was asked about communications between herself, Ms. Wallace, and counsel.

Q. And this was a -- a conscious decision made by you and the investigator, to not inform him prior to his interview about these other allegations?

A. The investigator doesn't make that decision. It was a decision that would have been made between myself and the administrators, with our attorney.

Q. Okay. So, just so we're clear, the – your understanding was that you were not required to tell him about the allegations involving Witnesses 8, 10, and 19, prior to his interview?

A. Correct.

Q. And you formed that opinion in reliance on the advice you received from counsel?

A. Correct.

Q. Okay. What specifically did counsel tell you, that led you to reach that conclusion?

MS. DEGANCE: Objection. Don't answer that question, based on the attorney/client privilege. Don't discuss any specific conversations with counsel.

(Guevara Depo. at 161.) A copy of the Guevara deposition is attached as Exhibit C.

Q Did you have any conversations with counsel from Rollins about how to conduct this investigation?

A Yes. I had one -- one conversation sticks out in my mind.

Q And what was the purpose of that conversation?

MS. DEGANCE: All right. Don't. She's not going to answer anything more than that…. There is an attorney/client privilege.

….

Q What was the substance of the advice that you received from Rollins' counsel about the conduct of this investigation?

MS. DEGANCE: I am instructing her not to answer based on the attorney/client privilege.

(Wallace Depo. at 154-55.) A copy of the Wallace deposition is attached as Exhibit D.

**CONFERRAL BETWEEN PARTIES**

The parties have engaged in substantial discussions about this issue, culminating in correspondence at the end of June. A copy of the June 26, 2019, letter from Counsel is attached as Exhibit E. As a result of this communication and conferral, Counsel for Plaintiff represents that the parties have been unable to resolve the issue(s) presented in the motion. Counsel for Defendant has stated, "We continue to maintain our objection to discovery of communications between the institution's counsel and the institution's Title IX investigator, Deena Wallace." (July 1, 2019 Email, Attached as Exhibit F.) Counsel also discussed this issue at depositions.

**ARGUMENT**

**A.     Standard**

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).

Because Plaintiff alleges federal and state claims, federal law governs the applicability of privileges. *Ameritox, Ltd. v. Millennium Laboratories, Inc.*, M.D.Fla. No. 8:11-cv-775-T-24TBM, 2013 U.S. Dist. LEXIS 195412, at *6-7 (Nov. 4, 2013). *See also Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) ("The federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness testimony is relevant to a pendent state law count which may be controlled by a contrary state law privilege."). Accordingly, the applicability of privileges are determined under federal common law. *Universal City Dev. Ptnrs, Ltd. v. Ride & Show Eng., Inc.*, 230 F.R.D. 688, 690 (M.D.Fla.2005), *citing* Fed. R. Evid. 501.

The attorney-client privilege is only available when all the elements are present. *Provenzano v. Singletary*, 3 F. Supp. 2d 1353, 1366 (M.D. Fla.l997), *aff'd*, 148 F.3d 1327 (11th Cir. 1998). The elements of the attorney-client privilege are:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived.

*Id.*, quoting *Int'l Tel. & Tel. Corp. v. United Tel. Co..* 60 F.R.D. 177, 184-85 (M.D. Fla. 1973) (citations omitted).

**B.  The Communications With Wallace Are Not Protected By The Attorney-Client Privilege**

The attorney-client "privilege is not a favored evidentiary concept in the law since it serves to obscure the truth, and it should be construed as narrowly as is consistent with its purpose." *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir.1987). Rollins has the burden of establishing the privilege. *In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987)("The person invoking the privilege does bear the burden of proving its existence"). Rollins cannot meet wit's burden for two reasons: (i) the communications were not confidential because Wallace is a third party; and (ii) any privilege has been waived by the testimony of a Rollins witness that she made relevant decisions based on the advice she received from counsel.

**1.  The Privilege Does Not Extend To Wallace**

In order to establish that information is protected by the attorney-client privilege, the party claiming the privilege must establish, *inter alia*, the absence of the disclosure to third parties. *See e.g. In re Grand Jury Proceedings 88-9*, 899 F.2d 1039, 1042 (11th Cir. 1990) (observing that privilege is not available in "the presence of strangers"); *Brown v. NCL (Bah.), Ltd.*, 155 F. Supp. 3d 1335, 1338 (S.D.Fla. 2015) ("It is well-established that once a party asserting attorney-client privilege makes disclosures of privileged information to third parties, the communications are no longer

confidential."), *citing Suarez*, 820 F.2d at 1160 (11th Cir. 1987) (justification for privilege ceases once disclosed to third parties).

In general, when an organization is involved, the privilege applies to communications between counsel and employees acting within the scope of their duties. *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981). This Court recently examined whether the attorney-client privilege extends to independent contractors or consultants. *United States v. Advanced Pain Mgt. & Spine Specialists of Cape Coral & Fort Myers*, M.D.Fla. No. 2:17-cv-272, 2018 U.S. Dist. LEXIS 219924 (June 28, 2018); *Every Penny Counts, Inc. v. Am. Exp. Co.*, No. 807-cv-1255, 2008 U.S. Dist. LEXIS 109790 (M.D. Fla. May 15, 2008).

The *Advanced Pain Mgt.* and *Every Penny Counts* courts relied upon an Eighth Circuit case, *In re Bieter Company*, 16 F.3d 929 (8th Cir. 1994). *See* 2018 U.S. Dist. LEXIS 219924 at *9 (observing that "[n]either the United States Supreme Court nor the Eleventh Circuit Court of Appeals has addressed this scenario specifically"). In *Bieter* the Eighth Circuit extended the privilege to non-employee representatives, who have a significant relationship or intimate involvement with the client corporation, possess relevant information needed by the client corporation's counsel for proper legal advice. The court found that communications between corporate counsel and none-employees were within the scope of the attorney-client privilege because the independent consultant was the "functional equivalent of an employee." *Id.* at 938.

In *Advanced Pain Mgmt*, this Court found that two independent contractors were the functional equivalent of employees. The first independent contractor provided medical billing services, including managing the entire accounts receivable process, was found to be the equivalent of an employee. The court noted that the independent contractor had access to "electronic medical records and financial information" and was "in daily contact with… employees." 2018 U.S. Dist. LEXIS 219924 at *26. The second independent contractor "acted as an office manager or human resources director

7

on an as-needed basis" and "had extensive knowledge of [the company's] day-to-day operations, including management, human resources, and marketing issues." 2018 U.S. Dist. LEXIS 219924 at *28. Similarly, in *Every Penny Counts* the court found that a consultant who assisted with the drafting of a patent claim was the functional equivalent of an employee. The court was persuaded by the fact that the consultant "essentially shared in the decision-making responsibility of writing and enumerating the claims. 2008 U.S. Dist. LEXIS 109790 *10.

### a. Wallace Was Not The Functional Equivalent Of An Employee

Wallace testified that she was not the functional equivalent of an employee:

Q So just so we are clear. You're not like the functional equivalent of an employee doing this?

A No. I wouldn't -- well, the role of an investigator is supposed to be an a neutral and unbiased person. Rollins takes the extra step, while most schools-- most colleges and universities have an in-house person acting in that function. Rollins takes the extra step of hiring me, somebody that doesn't even live in the city, to come in and to do that. So while I'm fulfilling a role that they have to have and that they could very well have in-house, I'm not in-house, but I'm still following their policy and their process.

(Wallace Depo. at 27-28.) She described the relationship as follows:

Q Okay. So what was the relationship then between you and Rollins?

A A contractual one.

Q When you say "contractual," would you act as an independent contractor then?

A Correct.

Q Okay. Were you acting as their attorney?

A No. …

Q … were you on their payroll?

1A I don't believe so. No. I submit invoices to Rollins….

Q Okay. And they don't withhold payroll out of that?

A No. I do all of that.

(Wallace Depo. at 25.) Unlike the independent contractors in *Advanced Pain Mgmt* and *Every Penny Counts*, Wallace did not have regular interactions or presence with Rollins as would be expected by an employee. She explained:

> Q …Did you have a Rollins email account?
>
> A No.
>
> Q Did you have a phone number from Rollins?
>
> A No.
>
> Q Did you have the ability to log into their computer system?
>
> A No.
>
> Q Did you have an office at Rollins?
>
> A No, not a personal office.
>
> Q Okay. Did you have full access to disciplinary records, for example, from Rollins?
>
> A I didn't have personal access. If I wanted any -- if I wanted a record, I would have to request it.
>
> Q Did you communicate with any employees at Rollins
>
> except for Ms. Jimenez?
>
> A If I was -- do you mean like in a meaningful way?
>
> Q Yeah.
>
> A No.

(Wallace Depo. at 27-28.)

Indeed, extension of the privilege to Wallace does not serve the purpose of the attorney-client privilege. Wallace, at one point, suggested that she did not receive ay advice of counsel. She testified:

> Q Did you receive any advice from counsel about how to conduct your investigation?
>
> A No.

9

(Wallace Depo. at 153.) While Wallace later testified that she received advice on "one issue," Wallace maintained that she makes the decisions about what information is relevant and which interviews to conduct on her own. (Wallace Depo. at 27.)

### b. *Energy Capital Corp* Test

In determining whether an independent contractor or consultant is the functional equivalent of an employee, this Court in *Advanced Pain Mgt.* and *Every Penny Counts* adopted the three part test identified by the United States Court of Federal Claims in *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 490 (2000). Under that test, an independent contractor may be considered the functional equivalent of an employee if the specific facts of this case illustrate that they: (1) possessed decision making responsibility regarding the matter about which legal help was sought, (2) were implicated in the chain of command relevant to the subject matter of the legal services, or (3) were personally responsible for or involved in activity that might lead to liability for the corporation. See *Advanced Pain Mgmt.* 2018 U.S. Dist. LEXIS 219924 at *25,; *Every Penny Counts*, 2008 U.S. Dist. LEXIS 109790 at *2.

Wallace did not possess decision making responsibility regarding the matter about which legal help was sought and was not implicated in the chain of command relevant to the subject matter of the legal services. The Rollins Title IX coordinator, Guevara, testified: "the final responsibility for this report is mine." (Guevara Depo. at 142.) Wallace was an investigator hired to make final findings during an investigation, but she did not make final determinations of discipline or other actions taken by Rollins after receiving her report. She testified:

> Q And so did you make the final decision on whether someone violated the policies of Rollins College?
>
> A At the time of the incident investigation, I was the adjudicator of a Title IX violation.
>
> Q And what does that mean?

> A   So I would conduct the investigation. I would make findings of fact, and then I would come to a conclusion as to whether or not the evidence -- there was sufficient evidence to prove the required burden…

(Wallace Depo. at 32.)  Wallace also was not involved in any of the appeals.  (Wallace Depo. at 157.)

Wallace is an attorney.  She is, therefore, is well aware of the contours of attorney-client relationships.  She testified that she would speak with Rollins' counsel if she had questions.  (Wallace Depo. at 29.)  However, Wallace stated that this was in more of an "advisory" role and not necessarily as part of an attorney-client relationship:

> Q   So how would you describe your relationship then with counsel from Rollins?
>
> ….
>
> [A]: … It was more -- I would describe it more as if I had a question about something, I could go to counsel here and ask them. It wasn't -- it was more of like an advisory role.
>
> Q   So you didn't pay Mr. Alexander or anyone at this firm for advice?
>
> A   No.
>
> Q   You weren't considered a client of this firm?
>
> A   No.

(Wallace Depo. at 30-31 (discussion between counsel omitted).)  Instead, she was hired to conduct an independent investigation.  Wallace was not part of management or empowered to make decisions for Rollins.

There is no indication in the record that Wallace often sought legal advice from Rollins' outside counsel in order to perform her duties.  Even though Wallace's investigation is part of this litigation, Wallace was not personally responsible for or involved in activity that might lead to liability for the corporation.  There is no claim that she acted negligently, and Wallace was not involved in the development or implementation of Rollins' Title IX Policy.  She said, "I had nothing to do with

11

anything at Rollins College except investigating their Title IX matters where they determined an investigation was needed." (Wallace Depo. at 32.)

In particular, Wallace stated that she did not receive any legal advice about how to conduct the investigation:

> Q ... Did you receive any advice from counsel about how to conduct your investigation?
>
> A No.

(Wallace Depo. at 153.) She further testified about her independence:

> Q Did you attend any meetings at Rollins involving other management other than Ms. Jimenez?
>
> A No.
>
> Q Did you have any role in developing the policies at Rollins concerning Title IX?
>
> A No.
>
> Q Did you represent Rollins at any meetings or conferences or anything like that?
>
> A No.
>
> Q Okay. When you met with people while conducting your duties, did you hold yourself as representing Rollins or as independent?
>
> A As independent. At some of these conferences, you had to put down what school you were with, and so Rollins would be under that, but I always held myself out as being independent. And, you know, yeah, I was independent.

(Wallace Depo. at 31.) . In fact, she testified that she was not even aware why she was included on emails with counsel for Rollins that are the subject of this Motion.

> Q Okay. Now, do you -- it appears that there is some conversation that went on that was redacted on attorney/client privilege by Rollins' doctors. Without telling me the substance of it, do you know what that conversation was?
>
> A I have no idea.
>
> Q Do you know why you would have been included in that conversation?
>
> A I don't.

> Q Okay. Did you specifically ask to receive legal advice on the issue posed by Mr. Barker from counsel from Rollins?
>
> A No. There is obviously some missing part. I don't recall ever seeing this section. I am not saying that it didn't -- it wasn't in a string of other emails I may have been included on, but I don't recall an conversation with counsel regarding that request.
>
> Q So just so we're clear. Did you make any requests of counsel for guidance on that request?
>
> A Did I make any? I don't -- no. I don't recall ever doing so…

(Wallace Depo. at ). Wallace later added that she specifically did not recall seeking the advice of legal counsel about how to conduct the investigation and interview of John Doe.

> Q Without telling me the substance of that advice, did you seek the advice of counsel on the issue about whether you should inform John Doe about the allegations of prior sexual misconduct prior to his interview?
>
> A I don't recall. There were several matters going on at this time that I don't recall that -- I don't recall that ever being a question in my mind as to whether or not because it just wasn't part of the process.

(Wallace Depo. at 128.)

### 2. The Privilege Was Waived

Even if the Court finds that the privilege extends to Wallace, any privilege has been waived by the testimony of Guevara that she made decisions based on the advice she received from counsel.

The privilege can be waived "when a client asserts reliance on an attorney's advice as an element of a claim or a defense," "testifies concerning portions of the attorney-client communication," or "places the attorney-client relationship directly at issue." *In re County of Erie*, 546 F.3d 222, 228 (2nd Cir. 2008). *See also Luxottica Group, S.p.A. v. Airport Mini Mall, Ltd. Liab. Co.,* N.D.Ga. No. 1:15-cv-1422-AT, 2017 U.S. Dist. LEXIS 91738, at *14 n. 2 (Feb. 1, 2017) ("To the extent Defendants testify they relied on advice of counsel they would waive any confidentiality privilege they have as to their communications with counsel as to their legal options…"). This type of 'implied waiver' is found when the holder of the privilege "asserts a claim that in fairness requires examination of protected

communication." *United States v. Bilzerian*, 925 F.2d 1285 (2d Cir. 1991); *GAB Business Services, Inc. v. Syndicate 627*, 809 F.2d 755 (11th Cir. 1987).

On page 161 of her deposition (set forth *supra)*, Guevara testified that the decision about the questioning of John Doe about prior sexual history was made in in reliance on the advice received from counsel. Because Wallace and Guevara relied on the legal advice referenced in the testimony and the withheld documents in conducting the investigation, Guevara's testimony during her deposition acts as a waiver of the attorney-client privilege. *See Cox v. Adm'r U.S. Steel and Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994) ("The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party."), *quoting Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989).[2]

## CONCLUSION

The Motion to Compel should be granted. This Court should issue an Order requiring Defendant to Produce the withheld documents. The Court should further Order Rollins to produce Ms. Guevara and Ms. Wallace for telephonic depositions and answer any deposition questions about the advice Ms. Wallace received from Rollins' counsel about the conduct of her investigation.

---

[2] This Court's decision *Butterworth v. Lab. Corp. of Am. Holdings*, No. 3:08-CV-411-J-34JRK, 2010 U.S. Dist. LEXIS 147668, (M.D. Fla. Dec. 2, 2010), *aff* d, No. 3:08-CV-411-J-34JRK, 2011 U.S. Dist. LEXIS 160762 (M.D. Fla. Oct. 14, 2011), is not to the contrary. In *Butterworth*, this Court found no automatic waiver of the attorney-client privilege when the defendant simply asserted two good faith affirmative defenses. This Court observed that "these are standard defenses in Title VII cases to avoid punitive damages." *Id.* at *17. Notably, in *Butterworth*, a witness specifically testified that "he consulted with in-house counsel" but "has not relied on, and does not intend to rely on" that advice. *Butterworth* distinguished *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458 (E.D.Mich. 2008). But *Henry* is a better precedent. The *Henry* court observed that "Once the defendant has relied (even in small part) on privileged communications to make its case, fairness requires that the privilege be put aside in order for the plaintiff to test the defendant's contentions." 263 F.R.D. at 470. Rollins has not asserted the defense of good faith in its Answer. *See* Answer and Affirmative Defenses, Docket#39. However, a report by Rollins' expert asserts "good faith" in a number of places. *See* Expert Disclosure at 4-5, 21.

14

Respectfully submitted,

/s/ Joshua A. Engel
Carlos J. Burruezo, Esq. (#843458)
carlos@burruezolaw.com
Bertha L. Burruezo, Esq. (#596973
bertha@burruezolaw.com
941 Lake Baldwin Lane, Suite 102
Orlando, Florida 32814
Office: 407.754.2904
Facsimile: 407.754.2905

JOSHUA ADAM ENGEL (Ohio 0075769)
ANNE TAMASHASKY (Ohio 0064393)
*Special Admission*
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com
tamashasky@engelandmartin.com

## CERTIFICATION OF COUNSEL

Pursuant to Local Rule 3.01(g) and Fed R. Civ. P. 37(a)(1), the undersigned counsel certifies that before filing this Motion counsel conferred with counsel for the opposing party in a good faith by written correspondence and conversations during depositions in an effort to resolve the issues raised by the motion and obtain the relief sought without court action. Counsel for the opposing party did not agree on the resolution of the motion.

/s/ Joshua Engel
Joshua Adam Engel (Ohio No. 0075769)
(*pro hac vice*)

**CERTIFICATE OF SERVICE**

This certifies that the foregoing was filed electronically on July 7, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

                                                                /s/ Joshua Engel
                                                       Joshua Adam Engel (Ohio No. 0075769)
                                                       (*pro hac vice*)