UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN DOE,

      Plaintiff,

v.                                                                                  CASE NO.: 6:18-cv-01069-Orl-37KRS

ROLLINS COLLEGE,

      Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56, Federal Rules of Civil Procedure, Defendant, Rollins College, moves for summary judgment in its favor as to all claims made by the Plaintiff.

## BACKGROUND

Plaintiff asserts that Rollins violated Title IX's prohibition against gender discrimination when it found him responsible for violating the College's Title IX Sexual Misconduct Policy. Plaintiff further claims that Rollins violated an implied-in-fact contract with Plaintiff when it investigated allegations of sexual misconduct against Plaintiff and found him responsible. The entirety of Plaintiff's case reduces to the argument that Rollins got it wrong and that College policy should be different. However, Title IX provides a basis for claims of sex discrimination, not a right of appeal of student discipline matters.

Plaintiff is a former Rollins College student who first enrolled in fall of 2014.[1] This case stems from a sexual encounter that occurred between Plaintiff and another Rollins' student, Jane Roe, in the early morning of February 18, 2017 (the "Incident"). Prior to the Incident, Plaintiff and Jane Roe were "pretty good friends" who spent time together hanging out in their dorms, going to fraternity and sorority functions around campus, eating in Rollins' dining hall, and

---

[1] February 19, 2019 Deposition of John Doe ("John Doe Depo.") at 10-11.

{00369301 2 }

occasionally doing homework both in group settings and one-on-one.[2]  After returning from winter break for the Spring 2017 semester, Plaintiff developed romantic feelings for Jane Roe.[3] Despite Jane Roe never telling Plaintiff that she had romantic feelings for him, Plaintiff believed she was interested in him because of the high frequency of their communications.[4]  However, Plaintiff was not sure of the "dynamics" of their relationship, so he decided to invite Jane Roe to his fraternity's February 17, 2017 Grab-a-Date function (the "Date Function") to "see what would happen."[5]  Jane Roe agreed to be Plaintiff's date.[6]

## I.    The Incident

On February 17, 2017, Plaintiff and Jane Roe attended the Date Function held at a private residence.[7]  Following the Date Function, they went to a bar called "The Porch."[8]  Plaintiff and Jane Roe left The Porch together and went back to Plaintiff's dorm room to watch a movie.[9]  It was in Plaintiff's dorm room that the Incident occurred.

Upon returning to Plaintiff's dorm room in the early morning of February 18, 2017, it is undisputed that Plaintiff and Jane Roe had a sexual encounter.[10]  It is further undisputed that the sexual encounter consisted of kissing; sexual touching of Jane Roe by Plaintiff; and Plaintiff inserting his fingers into Jane Roe's vagina.[11]  Plaintiff testified that he consented to the sexual encounter with Jane Roe.[12]  Jane Roe alleged in her Title IX complaint that she was very

---

[2] John Doe Depo. at 18-19; Exh. 11.  With regard to Exhibit 11, Plaintiff testified that the statements contained in Exhibit 11 were for the most part an accurate representation of what he reported to Investigator Deena Wallace, but the characterizations of his demeanor during the interview were not accurate. John Doe Depo. at 56-57; 163-164.
[3] John Doe Depo. at 55, Exh. 11.
[4] John Doe Depo. at 55, Exh. 11.
[5] John Doe Depo. at 55, Exh. 11.
[6] John Doe Depo. at 56, Exh. 11.
[7] John Doe Depo. at 56-57, Exh. 11.
[8] John Doe Depo. at 57, Exh. 11.
[9] John Doe Depo. at 57-58, Exh. 11.
[10] Declaration of Deena Wallace attaching as Exhibit A the November 20, 2017 Final Report in the matter of John Doe and Jane Roe including exhibits ("Exhibit A, Final Report") at 9, 19; see also John Doe Depo. at Exh. 11.
[11] Exhibit A, Final Report at 9-10, 19; see also John Doe Depo. at Exh. 11.
[12] John Doe Depo. at 113.

{00369301 2 }                                   2

intoxicated and the sexual encounter was not consensual on her part.[13]  The sexual encounter, including digital penetration, is undisputed.  The question during the investigation was whether Jane Roe consented to the sexual activity.

Four days after the sexual encounter with Plaintiff, on February 22, 2017, Jane Roe initiated a meeting with Oriana Jimenez, Rollins' Title IX Coordinator, to report the Incident because the sexual activity was not consensual.[14]  Initially, Jane Roe did not want to participate in a Title IX investigation.[15]  In November 2017, Rollins received an anonymous call claiming that an individual had sexually assaulted three girls.[16]  The anonymous caller provided the first name of the individual and the name was similar to Plaintiff's first name.[17]  The anonymous caller also stated that the individual was a President of a Fraternity.[18]  Because the information provided by the anonymous caller appeared to describe Plaintiff, Jimenez reached out to Jane Roe to see if Jane Roe had additional information.[19]  At this time, in November 2017, Jane Roe decided to initiate a Title IX investigation into the Incident.[20]

## II.  The investigation

The College's Title IX: Sexual Misconduct and Harassment Policy (the "Policy") applied to allegations of violations of Title IX.[21]  The Policy defines the conduct prohibited by the policy.[22] The Policy also defines Consent, Coercion, and Incapacitation and provides the procedures for conducting investigations into alleged violation of the Policy.[23]  Rollins hired an

---

[13] Exhibit A, Final Report at 3 which refers to Exhibit B to the Final Report.
[14] Exhibit A, Final Report at 2-3.
[15] Exhibit A, Final Report at 3.
[16] Exhibit A, Final Report at 3.
[17] April 15, 2019 Deposition of Oriana (Jimenez) Guevara ("Guevara Depo.") at 127-128.
[18] Guevara Depo. at 127-128.
[19] Guevara Depo. at 127.
[20] Guevara Depo. at 128-129.
[21] Guevara Depo. at 51; Exh. 29.
[22] Guevara Depo. at Exh. 29, Rollins/Doe-000677-000679.
[23] Guevara Depo. at Exh. 29, Rollins/Doe-000679-000680; 000686-000687.

outside Title IX Investigator, Deena Wallace, to investigate Jane Roe's allegations.[24]  Wallace is a former Assistant State Attorney in Jacksonville who has no connection to Rollins or to any of the participants in this case other than serving as the Title IX Investigator.[25]

After interviewing twenty-two (22) witnesses, Wallace issued a 71 page written report containing 15 exhibits (the "Final Report").[26]  The Final Report contains a description of the parties, the date of the reported incident, a history of the case, a description of the interim measures provided to both parties, a recitation of the alleged violation of Rollins' Policy, a description of the prohibited conduct and relevant policy definitions, procedures for resolving sexual misconduct and harassment, a statement of jurisdiction, the standard of proof, a summary of the testimony of all 22 witnesses, a list of exhibits, findings of fact and analysis, and a conclusion as to whether a policy violation occurred.[27]  Wallace found Plaintiff responsible for violating Rollins' Policy.[28]  The Final Report states, in extensive detail, the investigation process and the reasons upon which Wallace bases her determination that Plaintiff engaged in a sexual encounter with Jane Roe, including digitally penetrating Jane Roe's vagina without her consent, and was, therefore, responsible for his actions under the Policy.  Defendant will not rehash the process or Wallace's reasoning here; the complete Final Report including all exhibits is attached as **Exhibit A** to the Declaration of Deena Wallace filed with Defendant's Notice of Filing Documents in Support of Defendant's Motion for Summary Judgment.

### III. The sanctions

The Office of Community Standards and Responsibility determines the appropriate

---

[24] June 19, 2019 Deposition of Deena Wallace ("Wallace Depo.") at 19; 85.
[25] Wallace Depo. at 7-17; 22-32.  Wallace testified, "I had nothing to do with anything at Rollins College except investing their Title IX matters where they determined an investigation was needed." Wallace Depo. at 32.
[26] Exhibit A, Final Report.
[27] Exhibit A, Final Report.
[28] Exhibit A, Final Report at 71.

sanction(s).[29]    Maeghan Rempala, Director of Community Standards and Responsibility, ordinarily determines the sanctions, but consults her supervisor, Meghan Harte Weyant, Assistant Vice President for Student Affairs and Dean of Students, if the sanction will be more than a one-semester suspension.[30] In determining the sanction, Rempala read the Final Report and all of the attachments, looked at the nature and severity of the case, looked at the student's prior conduct, and considered college precedent.[31]  Here, Rempala imposed the following sanctions: (1) a contact restriction so that the no contact order between Plaintiff and Jane Roe remained in place; (2) dismissal; and (3) privilege restrictions in which Plaintiff was not permitted to participate in commencement/graduation ceremonies, alumni reunion events, and from returning to campus.[32]  The sanctions also stated that Plaintiff's dismissal would be noted on his transcript.[33]

### IV. Plaintiff's appeal

On March 17, 2018, Plaintiff appealed the decision on the following grounds: (1) procedural misconduct, (2) the appropriateness of the sanctions imposed, and (3) whether the preponderance of the evidence standard was met.[34]  Plaintiff's appeal was considered by Mamta Accapadi, Rollins' Vice President for Student Affairs.[35] Dr. Accapadi's Title IX appellate role is to see that Rollins' procedural standards are met and to assess whether Rollins followed its processes.[36] Upon receipt of Plaintiff's appeal, Dr. Accapadi reviewed Plaintiff's assessment of the various problems with the investigation, determination, and sanctions including all the

---

[29] Guevara Depo. at Exh. 29, Rollins/Doe-000687.
[30] April 15, 2019 Deposition of Maeghan Rempala ("Rempala Depo.") at 5; 37.
[31] Rempala Depo. at 8.
[32] John Doe Depo. at Exh. 14, p. 26.
[33] John Doe Depo. at Exh. 14, p. 26.
[34] Guevara Depo. at Exh. 29 at Rollins/Doe-000687; John Doe Depo. 81-83, Exhs. 15-16.  Notably, both Plaintiff and Jane Roe submitted an appeal to Dr. Accapadi.  Jane Roe's appeal argued that the sanctions against Plaintiff were not sufficient. April 16, 2019 Deposition of Mamta Accapadi ("Accapadi Depo.") at 61, Exh. 52.
[35] Accapadi Depo. at 5; 10-11.
[36] Accapadi Depo. at 37.

supplemental information provided by Plaintiff.[37]   In making her decision on appeal, Dr. Accapadi also reviewed the Final Report and outcome letter sent to Plaintiff and Jane Roe.[38] Accapadi determined that there was no procedural misconduct during the investigation and also determined that Wallace's findings met the preponderance of evidence standard.[39]   Dr. Accapadi affirmed most of the sanctions, but modified the sanctions so there would be no effect on Plaintiff's undergraduate degree from Rollins.[40]   Dr. Accapadi also did not affirm the sanction requiring notation on John Doe's transcript.[41]

John Doe graduated from Rollins with his Bachelor's degree in December 2017 before Wallace completed her report or made a determination.[42]   Doe had been accepted into the Rollins Crummer Graduate School of Business, but had not yet enrolled when the sanctions were imposed.[43]   The sanction of "dismissal" did not result in revocation of the degree already earned. The practical effect of the "dismissal" was Doe's inability to enroll in the graduate program.

There has never been a notation on Plaintiff's educational transcript about the Title IX investigation, the determination, or the sanction.[44]   Plaintiff alleges in his Amended Complaint that there is a derogatory notation on his transcript, but Plaintiff testified he was unaware of an adverse notation on his transcript.[45]   In fact, there is no notation about the Title IX case on his transcript and there never has been such a notation.

## MEMORANDUM OF LAW

### I. Ultimate issue on Title IX claim is whether John Doe can prove that Rollins discriminated against him because of sex

---

[37] Accapadi Depo. at 45.
[38] Accapadi Depo. at 44-46.
[39] Accapadi Depo. at 49; 61, Exh. 52.
[40] Accapadi Depo. at 62.
[41] Accapadi Depo. at Exh. 52.
[42] John Doe Depo. at 14.
[43] John Doe Depo. at 107-108.
[44] John Doe Depo. at 14-16.
[45] John Doe Depo. at 14-15; Exh. 1.

Plaintiff brings a claim under Title IX under two separate counts, titling them (1) erroneous outcome and (2) selective enforcement.[46] These claims are actually "formal doctrinal tests to identify general bias in the context of university discipline." *Doe v. Purdue Univ.*, No. 17-3565, 2019 WL 2707502, at *10 (7th Cir. June 28, 2019). However, there is no reason to "superimpose doctrinal tests on the statute" because all these tests do is "describe ways in which a plaintiff might show that sex was a motivating factor in [a college or university's] decision to discipline a student." *Id.* at 11. The more appropriate question to be determined by the Court in this case is whether Plaintiff can prove that Rollins discriminated against him "on the basis of sex." *See id.* This burden is the same for every Plaintiff who alleges sex discrimination regardless of the law under which the allegations are made. *Bowers v. Bd. of Regents of Univ. Sys. of Georgia*, 509 Fed. App'x 906, 910 (11th Cir. 2013) (discussing Title IX); *Marshall v. Mayor & Alderman of City of Savannah, Ga.*, 366 Fed. App'x 91, 98 (11th Cir. 2010) (discussing Title VII).

## II. The Court should apply the standard stated in *McDonnell Douglas*

### A. The *McDonnell Douglas* burden shifting standard should be used by the Court to determine if Plaintiff can show sex discrimination under Title IX

"Neither the Supreme Court nor Eleventh Circuit have established a framework for analyzing Title IX challenges to university disciplinary proceedings." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1236 (11th Cir. 2018). Title IX was patterned after Title VI of the Civil Rights Act that bans racial discrimination in the workplace and universities. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998). As a result, courts look at the body of case law under Title VI in interpreting Title IX. *Bowers v. Bd. of Regents of Univ. Sys. of Georgia*, 509 Fed. App'x 906, 911 n. 8 (11th Cir. 2013) (we construe Titles VI and IX *in pari materia*); *Haley*

---

[46] (Doc. 14) Amended Complaint and Jury Demand (hereinafter "Amended Complaint") at 27-37.

*v. Virginia Com. Univ.*, 948 F. Supp. 573, 578 (E.D. Va. 1996). Where there is no direct evidence of discrimination, Courts apply the *McDonnell Douglas* test to determine if intentional discrimination occurred in violation of Title VI. *Sirpal v. Univ. of Miami*, 509 Fed. App'x 924, 928 (11th Cir. 2013).

Courts also look to Title VII for guidance in analyzing disparate treatment discrimination claims under Title IX. *Pacheco v. St. Mary's Univ.*, No. 15-cv-1131, 2017 WL 2670758, at *13 (W.D. Tex. June 20, 2017); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) ("[C]ourts have interpreted Title IX by looking to the body of law developed under Title VI, as well as the caselaw interpreting Title VII). Courts, including the Eleventh Circuit, have acknowledged that the burden shifting framework in *McDonnell Douglas* should be used to evaluate Title IX claims at the motion to dismiss stage. *Bowers v. Bd. of Regents of Univ. Sys. of Georgia*, 509 Fed. App'x 906, 910 (11th Cir. 2013) (stating "[w]e apply Title VII case law to assess [the plaintiff's] Title IX claim"); *see also Doe v. Columbia Univ.*, 831 F.3d 46, 55-56 (2d Cir. 2016); *Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 580-81 (E.D. Va. 1996). The *McDonnell Douglas* burden shifting analysis should also be applied to Title IX disparate treatment sex discrimination claims at summary judgment. *See Pacheco v. St. Mary's Univ.*, No. 15-cv-1131, 2017 WL 2670758, at *13 (W.D. Tex. June 20, 2017) (utilizing the burden shifting *McDonnell Douglas* framework to assess the Title IX claims that allege disparate treatment of students on a motion for summary judgment); *Doe. v. Quinnipiac Univ.*, No. 3:17-cv-364, 2019 WL 3003830, at *14 (D. Conn. July 10, 2019).

Under *McDonnell Douglas*, a plaintiff who is claiming discrimination because of sex must first establish a *prima facie* case of discrimination. *Blom v. Wellstar Health Sys., Inc.*, 560 Fed. App'x 950, 954 (11th Cir. 2014). Once the plaintiff's *prima facie* case is established, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions."

{00369301 2 }                                       8

*Id.* "If the employer identifies a legitimate, nondiscriminatory reason for its decision, the burden shifts back to the plaintiff to demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* Despite the shifting burden of production, the burden of persuasion on the ultimate issue always remains with the plaintiff. *Id.*

### B. Plaintiff cannot establish a prima facie case of sex discrimination

To establish a *prima facie* case of gender discrimination a plaintiff must demonstrate (1) he is a member of a protected class; (2) he was subjected to an adverse action; and (3) similarly situated individuals outside of his protected class were treated more favorably. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). There is no dispute that Plaintiff is a member of a protected class. As to the second prong, Plaintiff asserts the following adverse actions: (1) the finding of "responsible" by Wallace;[47] (2) the appellate decision upholding the finding of responsibility;[48] and (3) the severity of sanctions imposed by Rollins.[49] However, Plaintiff cannot meet the third requirement of the *prima face* case because there is no similarly situated individual outside Plaintiff's protected class who was treated more favorably.

It is not unusual for courts to alter the exact language of the *McDonnell Douglas* test to fit the discriminatory action alleged by Plaintiff. *Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 580 (E.D. Va. 1996). Regardless of how the burden shifting analysis under *McDonnel Douglas* is phrased, the "basic requirement remains the same: the plaintiff, in order to create a presumption of discrimination and shift the burden to the defendant, must show that he has been treated differently from similarly situated people outside of the protected class." *Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 580 (E.D. Va. 1996).

---

[47] Amended Complaint at 32.
[48] Amended Complaint at 32.
[49] Amended Complaint at 36.

Here, Plaintiff asserts that Jane Roe is a comparator.[50] Specifically, Plaintiff alleges that "Rollins received credible information that John Doe engaged in sexual activity with Jane Roe while John Doe was intoxicated. Rollins did not encourage John Doe to file a complaint, consider the information, or otherwise investigate."[51] Plaintiff further alleges that "Rollins received credible information that John Doe was the victim of retaliation during the pendency of the investigation. Plaintiff alleges that Rollins did not encourage John Doe to file a complaint, consider the information, or otherwise do anything more than a cursory investigation."[52] In short, Plaintiff alleges that Jane Roe was treated differently because she was not investigated for violation of sexual misconduct even though Plaintiff claimed to be intoxicated during their encounter and, further failed to and/or did not adequately investigate Plaintiff's allegation of retaliation.

In order to establish that an individual is an appropriate comparator, a plaintiff must show that she is "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019). This means that, ordinarily, a comparator (1) "will have engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) "will have been subject to the same . . . policy, guidelines, or rule as the plaintiff"; (3) "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff"; (4) "will share the plaintiff's . . . disciplinary history." *Id.* at 1227. In other words, "a plaintiff and [his] comparators must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Id.*

Jane Roe is not a comparator. Plaintiff admitted that his sexual encounter with Jane Roe was consensual.[53] In contrast, Jane Roe consistently reported that she did not consent to the

---

[50] Amended Complaint at 36.
[51] Amended Complaint at 36.
[52] Amended Complaint at 36.
[53] John Doe Depo. at 113.

sexual activity.[54]  This fact alone, is fatal to Plaintiff's claim.  Plaintiff never complained to Wallace, or anyone else at Rollins, of nonconsensual sexual contact with Jane Roe.[55]  However, Jane Roe complained on two separate occasions, the first, four days after the sexual encounter on February 22, 2017 and the second time when she initiated the Title IX investigation in November 2017.[56]  For these reasons alone, Plaintiff is not "similarly situated in all material respects" to Jane Roe.  *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 933 (S.D. Iowa 2018) ("[I]f the accused student did not similarly initiate or attempt to initiate a complaint against his or her accuser, the two cannot be compared); *see also Doe v. Ohio State Univ.*, 323 F. Supp. 3d 962, 967-68 (S.D. Ohio 2018) (holding the accuser was not similarly situated to the plaintiff because there were no allegations that the female accuser was not disciplined following a complaint).  Therefore, Plaintiff cannot establish a prima facie case of discrimination.  *Griffin v. City of Jacksonville, Fla.*, 762 Fed. App'x 965, 972 (11th Cir. 2019) (affirming district court's grant of summary judgment where plaintiff could not establish a *prima facie* case because he could not show similarly situated individuals outside his protected class who were treated more favorably).

### C. Rollins had a legitimate nondiscriminatory reason for its decisions

As stated in *McDonnell Douglas*, Rollins must only articulate a legitimate non-discriminatory reason for the action.  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).  At this stage "[a defendant] . . . only needs to produce admissible evidence which would allow the trier of fact rationally to conclude that the . . . decision had not been motivated by discriminatory animus."  *Duckworth v. Pilgrim's Pride Corp.*, 764 Fed. App'x 850, 853 (11th Cir. 2019).

Wallace articulates the reasons for finding Plaintiff responsible for violations of Rollins'

---

[54] See Exhibit A, Final Report.
[55] Wallace Depo. at 106-109.
[56] Guevara Depo. at 128-129; Exhibit A, Final Report.

Policy in detail in the Final Report.[57] Wallace analyzed each section of Rollins' Policy that applied to the allegations against Plaintiff and explained why Plaintiff's actions were found to be in violation of the Policy.[58] In making her determination, Wallace was required to "weigh the credibility of the testimony of [Plaintiff] and [Jane Roe], as well as the surrounding witnesses and any other relevant evidence."[59] In doing so, Wallace found Jane Roe's account of the Incident to be more credible.[60] Accordingly, Wallace found Plaintiff responsible for violations of Rollins' Policy.[61] In determining the appropriate sanctions, Rempala carefully reviewed the Final Report and additional documentation, as well as, considered College precedent.[62] Finally, Dr. Accapadi made the decision to uphold Wallace's finding of responsibility and the sanctions because she did not find any procedural misconduct and determined that the sanctions were appropriate, despite determining that the sanctions needed clarification.[63] Rollins has articulated legitimate nondiscriminatory reasons for the alleged adverse actions.

### D. Plaintiff cannot show pretext

In order "[t]o avoid a motion for summary judgment, a plaintiff must submit 'significantly probative' evidence on the issue of pretext." *Manney v. Booker T. Washington Broad. Serv., Inc.*, No. cv-90-639-S, 1991 WL 350048, at *4 (N.D. Ala. Feb. 27, 1991), aff'd, 957 F.2d 871 (11th Cir. 1992) (citations omitted). A plaintiff must show both that the "reason [articulated by the defendant] was false and that discrimination was the real reason." *Duckworth v. Pilgrim's Pride Corp.*, 764 Fed. App'x 850, 853-54 (11th Cir. 2019). A plaintiff proves pretext by showing that a discriminatory reason "more likely motivated the [defendant]" or that the

---

[57] See Exhibit A, Final Report.
[58] Exhibit A, Final Report at 56-71.
[59] Exhibit A, Final Report at 58.
[60] Exhibit A, Final Report at 71.
[61] Exhibit A, Final Report at 71.
[62] Rempala Depo. at 8.
[63] Accapadi Depo. at 62.

"proffered explanation is unworthy of credence." *EEOC v. Exel, Inc.*, 884 F.3d 1326, 1330 (11th Cir. 2018). "So long as a defendant does not act because of a discriminatory reason, relief will not be granted solely because a decision was made for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all." *Jumbo v. Ala. State Univ.*, 760 Fed. App'x 918, 921 (11th Cir. 2019). Because pretext requires proof of discriminatory intent, "it is not sufficient for [a plaintiff] . . . to prove that the finding of his guilt or his allegedly severe punishment resulted from procedurally or otherwise flawed proceedings. Rather, he must show a causal connection between the allegedly flawed outcome and the alleged gender bias." *Haley v. Virginia Com. Univ.*, 948 F. Supp. 573, 578 (E.D. Va. 1996).

Here, Plaintiff criticizes Rollins' processes and the final determination, but fails to show gender bias. Nevertheless, Rollins will address each of Plaintiff's criticisms in turn. Plaintiff alleges the following criticisms to support his claim of sex discrimination under Title IX:

- Government, societal, and media pressures related to Title IX policies and practices resulted in gender bias against men by Rollins;[64]
- The resolution of credibility was without benefit of cross-examination;[65]
- Wallace "ambushed" Plaintiff by asking him about other, unrelated allegations of sexual misconduct;[66]
- The investigation into the allegations against Plaintiff took more than 60 days to complete without "good reason" and Plaintiff was not notified of the delay until day 64;[67]
- Rollins failed to investigate whether Plaintiff was too intoxicated to consent;[68]
- Rollins did not conduct an adequate investigation into Plaintiff's allegations of harassment during the course of the investigation;[69]
- Wallace considered "uncorroborated" allegations of misconduct that were irrelevant in making her finding of responsibility;[70]
- The Final Report contained "editorial comments" when describing Plaintiff but did not

---

[64] Amended Complaint at 27-31.
[65] Amended Complaint at 23.
[66] Amended Complaint at 10.
[67] Amended Complaint at 18.
[68] Amended Complaint at 18.
[69] Amended Complaint at 19.
[70] Amended Complaint at 19.

contain the same descriptions of Jane Roe evidencing bias on the part of Wallace;[71]

- The Final Report contained "rumors and innuendo" suggesting that Plaintiff committed other sexual assaults;[72]
- The Final Report included rumor and innuendo about Plaintiff's character and prior sexual history;[73]
- The findings of fact in the Final Report, which credit Jane Roe's allegations, reflect bias of investigator and do not consider contrary evidence;[74]
- The resolution of credibility by Wallace in favor of Jane Roe and the witnesses that supported her is unsupported by the evidence;[75]
- Oriana Jimenez, the Title IX Coordinator, is biased against men;

The foregoing criticisms of Rollins' Title IX process, investigation, and outcome cannot be tied to evidence of gender bias. They are Plaintiff's arguments on why the outcome should have been different.

## A.  There is no evidence that Rollins' Title IX Policy is biased against males

Rollins' Policy complied with Title IX, Title IX regulations, and Department of Education guidance at the time of the Incident. Rollins' Policy provided for notice, investigation into allegations by a third party investigator, and the opportunity for the parties to be heard and respond.[76]  When looking at claims relating to what a private college's obligations are under Title IX, courts have looked at whether the college or university complied with what was advised by the Department of Education Office for Civil Rights' ("OCR") Dear Colleague Letter during the relevant time period. *See Doe v. Rensselaer Polytechnic Inst.*, No. 118-CV-1374-FJS-CFH, 2019 WL 181280, at *3 (N.D.N.Y. Jan. 11, 2019) (discussing the requirements of the OCR's Dear Colleague Letter as applied to private colleges). Rollins' Policy was in compliance with

---

[71] Amended Complaint at 20.
[72] Amended Complaint at 20.
[73] Amended Complaint at 22.
[74] Amended Complaint at 23.
[75] Amended Complaint at 23.
[76] Guevara Depo. at Exh. 29, Rollins/Doe-000686-000687.

{00369301 2 }                                14

the OCR's 2011 Dear Colleague Letter that was the guidance at that time.[77]

Plaintiff argues that Rollins' Policy does not provide a right to cross examine witnesses.[78] Rollins is a private college and therefore is not required to provide "due process" as required by the federal Constitution. *Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 462 (S.D.N.Y. 2015).[79] There is no legal authority requiring Rollins to include a right to cross examination in its Title IX policy. Whether such a policy is a "best practice" is irrelevant, as it was applied equally to the accused and accuser, male or female. *See Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 472 (S.D.N.Y. 2015) (finding no evidence of gender discrimination and determining no factual issues existed as to whether the college's Title IX policy was adhered to despite the fact that "reasonable minds may differ as to what a school's sexual misconduct policies should provide"). Moreover, Rollins policy is gender neutral and applied equally to both the accuser and the accused and neither the Plaintiff nor Jane Roe were given the opportunity to cross examine witnesses.[80] Wallace confronted Jane Roe with Plaintiff's version of the events and, if there were questions Plaintiff wanted Wallace to ask Jane Roe, Plaintiff was free to bring them to Wallace's attention.[81] However, despite having counsel present during his interview, Plaintiff never presented Wallace with any questions for Jane Roe despite providing a written

---

[77] June 20, 2019 Deposition of Meghan Harte Weyant (hereinafter "Corporate Rep. Depo.") at 9; Guevara Depo. at 72. *Compare* Guevara Depo. at Exh. 29 *and* April 4, 2011 United States Department of Education, Office for Civil Rights Dear Colleague Letter.

[78] Amended Complaint at 23.

[79] Plaintiff may argue that courts have held that public colleges and universities are required to permit cross examination where credibility is an issue and there are competing narratives. *See Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018). However, this requirement has not been extended to private institutions. Moreover, at the time of the Incident, the OCR's stance was that cross examination of the accuser should be avoided. April 4, 2011 United States Department of Education, Office for Civil Rights Dear Colleague Letter (stating the "OCR strongly discourages schools from allowing the parties personally to question or cross-examine each other during the hearing").

[80] Guevara Depo. at Exh. 29.

[81] Wallace Depo. at 116-117.

statement to Wallace following his interview.[82]    Finally, Wallace testified that she did not believe that cross examination would have changed her investigation or conclusion.[83]

Plaintiff also asserts that he should have received better "notice" of the allegations against him, including advance notice that he was going to be questioned by the investigator about other sexual incidents.  Plaintiff never complained at the time about not receiving notice of the interview topics.[84]    Further, it was not Rollins' practice to provide advance notice of the topics or questions that the Title IX investigator intends to ask during an interview.[85]

**B.  There is no evidence that Rollins' Title IX policy was applied to Plaintiff in a discriminatory manner**

Plaintiff asserts that the delay in the conclusion of the Title IX investigation and the fact that he did not receive notice of the delay until 64 days had elapsed is indicative of gender discrimination.  Rollins' Policy states that,

> The College will respond promptly and equitably when any incident of sexual misconduct or harassment is alleged against a faculty, staff, or student. Typically the process will be completed within 60 days. This timeframe may be extended only for good cause . . . The College's response may take a number of forms within its discretion. This includes offering reasonable protection and services to the complainant or others, conducting a Title IX inquiry or review, conducting an investigation, and imposing corrective action.[86]

The undisputed evidence shows that the actual investigation concluded on December 12, 2017. The task that took longer than 60-days was the preparation of the Final Report.[87]  The delay was because Wallace suffered from health problems that resulted in a lengthy in-patient hospital stay.[88]  Indeed, Wallace was in the hospital from December 22, 2017 through March 19, 2018.[89]

---

[82] Wallace Depo. at 117, February 20, 2019 Deposition of Eric Barker, Esq. ("Barker Depo.") at 9-10; John Doe Depo. at 50; 66.
[83] Wallace Depo. at 50-52.
[84] Guevara Depo. at 164.
[85] Wallace Depo. at 60.
[86] Guevara Depo. at Exh. 29, Rollins/Doe-686.
[87] Wallace Depo. at 156; Guevara Depo. at 145.
[88] Wallace Depo. at 156.

Wallace completed the draft about February 12, 2018 while she was in the hospital.[90] Plaintiff received official notice of the Investigator's finding on March 5, 2018.[91] Rollins complied with its Policy and there is no evidence that the delay in issuing the Final Report was caused by, or a result of, any gender bias.

Plaintiff argues that under *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018), Rollins was required to pursue a Title IX investigation against Jane Roe even though Plaintiff never complained of nonconsensual sexual misconduct. The holding in *Doe v. Miami Univ.*, however, was in the context of a claim of "deliberate indifference" and not "selective enforcement" or "erroneous outcome." *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018); *Doe v. Ohio State Univ.*, 323 F. Supp. 3d 962, 967-98 (S.D. Ohio 2018). Further, in the instant case, there was no contention that Plaintiff did not consent to the sexual activities.[92] Wallace testified,

> There was absolutely no mention of [Plaintiff] being victimized by [Jane Roe]. He never brought that up. Had he brought that up, had he said -- had he told me, I was in an -- even if he didn't allege incapacitation, even if he said intoxication, I would have inquired further as to his intoxicated state; however, that is not what he said at all . . . He never once insinuated that she did anything to him that he didn't want.[93]
>
> \* \* \* \* \*
>
> [Plaintiff] never alleged until now or until all of this litigation, he has never alleged that [Jane Roe] did anything to him.[94]

Plaintiff testified that he consented to the sexual activities that occurred between him and Jane Roe.[95] Accordingly, at the time of the investigation, Rollins had no reason to believe the Plaintiff contended otherwise.

---

[89] Wallace Depo. at 156.
[90] Wallace Depo. at 157.
[91] John Doe Depo. at Exh. 14.
[92] Wallace Depo. at 107.
[93] Wallace Depo. 106-107.
[94] Wallace Depo. at 109.
[95] John Doe Depo. at 113.

Plaintiff also argues that Rollins did not sufficiently investigate Plaintiff's complaint of harassment during the pendency of the Title IX investigation. Jimenez testified that, when she received information from Plaintiff that he believed he was being harassed, she took the report "very seriously."[96] The events were limited to conversations between only a handful of individuals with no named witnesses to the actual conversations. Plaintiff reported two separate incidents and, initially, refused to provide Jimenez with the names of those involved.[97] Despite this, Jimenez met with and interviewed all of the individuals whose names were provided, as well as any individuals who were named by those she interviewed.[98] Jimenez testified that she spoke to each person "until they had nothing further to tell [her] about the circumstances."[99] Jimenez then spoke to Plaintiff to see if he had any additional information.[100] At that point, Jimenez did not have any way to interview the individuals as Plaintiff's refused to identify them and could not gather any additional information regarding the alleged incidents.[101] Ultimately, Jimenez issued a No Contact Order to all parties.[102] Plaintiff fails to explain what more Jimenez should have done. Moreover, there is no evidence that Jimenez investigated these allegations in a discriminatory manner or that she was motivated by Plaintiff's gender.

### C. There is no evidence of gender bias in the Title IX investigation or in Wallace's finding of responsibility

#### 1. Wallace's finding of responsibility was well-reasoned and there is no evidence of gender bias

Eric Barker, an attorney and Plaintiff's chosen advisor during the investigation process

---

[96] Guevara Depo. at 133.
[97] Guevara Depo. at 133; Exh. 44; John Doe Depo. at 70-78.
[98] Guevara Depo. at 133-134.
[99] Guevara Depo. at 136.
[100] Guevara Depo. at 137-138.
[101] Guevara Depo. at 138-139.
[102] Guevara Depo. at 139.

testified that he did not observe anything that would indicate gender bias by Wallace.[103]  Barker represented Plaintiff during the Title IX investigation and was present when Wallace interviewed Plaintiff.[104]  Barker testified that Wallace acted professionally, asked open-ended questions, and never made any accusatory statements.[105]

Wallace was required to determine credibility to decide the weight to give to the information he or she provided. *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 697 (M.D. Tenn. 2018) ("[I]n every investigation it is necessary to make credibility determinations, and there frequently will be a party displeased by one or more of those decisions").  Here, Wallace testified that in assessing credibility of a witness she considered the following factors: corroborating evidence, whether the evidence is physical or other witness testimony; plausibility; motive to lie; common sense; demeanor; and patterns of behavior.[106]  These factors are virtually identical to those set forth by the Florida Supreme Court when instructing juries on how to evaluate the believability of witnesses. *See* Fla. Standard Jury Inst. 601.2.  Moreover, it is not the Court's place to second guess the credibility determinations made by Wallace. *Doe v. Univ. of Dayton*, No. 3:17-CV-134, 2018 WL 1393894, at *7 (S.D. Ohio Mar. 20, 2018), *aff'd*, 766 Fed. App'x 275 (6th Cir. 2019) (stating that assessing the credibility of witnesses is not for the courts to second guess); *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 894 (N.D. Ohio 2017).

The Final Report contains significant details on how Wallace resolved issues of credibility.  Wallace acknowledges conflicting evidence, considers Plaintiff's version of events and explanations, and explains why she found Jane Roe to be more credible and why certain conflicting or questionable evidence was resolved in Jane Roe's favor.[107]  Wallace also

---

[103] Barker Depo. at 30.
[104] Barker Depo. at 9-12; 14-25.
[105] Barker Depo. at 25.
[106] Wallace Depo. at 44, 46, 48, 63.
[107] Exhibit A, Final Report at 58-62.

articulates why she found Plaintiff to be less credible than Jane Roe.[108]

Wallace's credibility assessments of the third-party witnesses are outlined in detail in the analysis section of the Final Report, including explanations for why witness statements were found to be credible and reliable.[109]  Wallace's credibility determinations are reasonable and supported with evidence.[110]  Notably, Wallace found witnesses that were "close friends" with Plaintiff such as Witness 4 and Witness 11 to be credible.[111]  Accordingly, there is no evidence of gender bias or discrimination based on Plaintiff's gender in Wallace's determination of credibility of the parties or witnesses.

Plaintiff also maintains that consideration of Plaintiff's sexual history and other allegations of sexual misconduct, characterized by Plaintiff as "rumors and innuendo" is evidence of gender bias.[112]  When Plaintiff refers to questions regarding his "sexual history" he is referring to Wallace's questions about whether Plaintiff had a girlfriend.[113]  Wallace testified that when asking questions about whether Plaintiff had a girlfriend, she was not asking about Plaintiff's prior sexual history.[114]  Instead, Wallace asked about serious girlfriends to determine if Plaintiff understood consent.[115]  Wallace was told by several witnesses that Plaintiff would blur the line between friendships and romantic interest.[116]  When asked about Jane Roe's consent, Plaintiff stated that Jane Roe gave him "signals" or "signs."[117]  Wallace testified that whether Plaintiff had a history of a serious consensual relationship would have impacted the

---

[108] Exhibit A, Final Report at 62-65.
[109] Exhibit A, Final Report at 65-70.
[110] Exhibit A, Final Report.
[111] Exhibit A, Final Report at 26-27; 41; 65; 68.  Witness 11 stated that he and Plaintiff were "best friends."
[112] Amended Complaint at 20-22.
[113] Wallace Depo. at 96.
[114] Wallace Depo. at 96.
[115] Wallace Depo. at 95-103.
[116] Wallace Depo. at 97.
[117] Wallace Depo. at 99-102.

believability of information from other witnesses.[118]   Accordingly, such information was relevant to Wallace's determinations of believability of the evidence provided during the investigation.

Rollins' Policy states that "[p]rior sexual history of the Responding Party may be considered relevant where there is a repetitive pattern of behavior."[119]   The information obtained by Wallace during the investigation regarding other similar acts by Plaintiff was more than simply "rumors and innuendo."   Wallace interviewed the actual individuals, specifically Witness 8, Witness 10, and Witness 19, who allegedly had nonconsensual sexual encounters with Plaintiff and these were first-hand accounts.[120]   Wallace also interviewed other witnesses for corroboration and sought information from Plaintiff.[121]   In finding Plaintiff "responsible" Wallace did not consider Witness 8's testimony because portions were not credible or reliable.[122] However, Wallace found Witness 10 and Witness 19 to be credible.[123]   Wallace determined that these incidents, taken together, demonstrated a "repetitive pattern of behavior" – the pattern being that Plaintiff took advantage of women with lower inhibitions and assumed consent rather than actually obtaining consent.[124]   It was appropriate for Wallace to consider evidence of repetitive pattern in making her determination.

### D.  There is no evidence of gender bias in the sanctions

"A college must have broad discretion in determining appropriate sanctions for violations of its policies." *Bleiler v. Coll. of Holy Cross*, No. CIV.A. 11-11541-DJC, 2013 WL 4714340, at *10 (D. Mass. Aug. 26, 2013); *Plummer v. Univ. of Houston*, 860 F.3d 767, 772 (5th Cir. 2017), *as revised* (June 26, 2017) ("It is not the role of the federal courts to set aside decisions of

---

[118] Wallace Depo. at 103.
[119] Guevara Depo at Exh. 29, Rollins/Doe-000686.
[120] Exhibit A, Final Report at 33-37; 38-41; 49-51.
[121] Exhibit A, Final Report at 26-28; Wallace Depo. at 131.
[122] Exhibit A, Final Report at 67; Wallace Depo. at 126.
[123] Exhibit A, Final Report at 67; Wallace Depo. at 82.
[124] Wallace Depo. at 149.

school administrators which the court may view as lacking in wisdom or compassion."). There is no record evidence of gender discrimination in the determination of the sanctions. In determining sanctions, Rempala read the Final Report and all of the attachments, looked at the nature and severity of the case, the student's prior conduct, and college precedent.[125] There is no evidence that Rempala used a different process in this case and there is no evidence that the sanctions were the result of gender bias.

**E.  There is no evidence of bias on the part of Oriana Jimenez and no evidence that she was a decisionmaker in the finding, appeal, or sanctions**

At Rollins, Title IX investigative reports are reviewed by the Title IX Coordinator to ensure compliance, redact confidential information and ensure that it contains all necessary information to be compliant with the College's Title IX Policy.[126] This review may include the Title IX Coordinator suggesting alternative language or recommending certain language about how to frame credibility.[127] The reason the Title IX Coordinator may suggest alternative language is to ensure that it complies with Rollins' Policy and to ensure clarity for the students.[128] Jimenez testified that as Title IX Coordinator she was responsible for investigation oversight and the quality of the work product associated with the investigation.[129] However, Jimenez was not responsible for making a conclusion in the investigation.[130] Jimenez testified that she was not the investigator and as Title IX Coordinator, she did not 'serve in a capacity where [she] was going to push the investigator in any particular way, given [her] particular opinions or processes."[131]

Jimenez was not a decisionmaker in the determination, decision on sanctions, or on

---

[125] Rempala Depo. at 8.
[126] Corporate Rep. Depo. at 79.
[127] Corporate Rep. Depo. at 80.
[128] Corporate Rep. Depo. at 80.
[129] Guevara Depo. at 142.
[130] Guevara Depo. at 142.
[131] Guevara Depo. at 21.

appeal. Therefore, any alleged bias by Jimenez is not relevant to whether the finding of responsibility, sanctions, or decision on appeal was discriminatory. *See Bleiler v. Coll. of Holy Cross*, No. CIV.A. 11-11541-DJC, 2013 WL 4714340, at *12 (D. Mass. Aug. 26, 2013) (the allegation of biased views of the Director of Student Conduct and Community Standards was "not relevant to the issue of whether the Hearing Panel (of which the Director was not an deliberating member) was biased against the plaintiff in reaching its decision.")

### III. Under the *Yusuf* tests of "erroneous outcome" and "selective enforcement", Plaintiff's claims fail

This Court should apply the standard stated in *McDonnell Douglas*. However, Plaintiff's claims fail under the *Yusuf* tests as well. To state an erroneous outcome claim under *Yusuf*, Plaintiff must prove: (1) "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding;" and (2) "a particularized allegation relating to a causal connection between the flawed outcome and gender bias," i.e., "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf v. Vasser College*, 35 F.3d 35 F.3d 709, 715 (2d Cir. 1994). According to the Eleventh Circuit, for erroneous outcome, Plaintiff must show that he was "innocent and wrongly found to have committed an offense" and that there is "a causal connection between the flawed outcome and gender bias." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1236 (11th Cir. 2018). To prevail on an erroneous outcome theory, a plaintiff must prove that the unlawful actions occurred due to his gender. *Yusuf*, 35 F.3d at 715.

To prove selective enforcement under *Yusuf*, Plaintiff must show that "a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *See Doe v. Cummins*, 662 Fed. App'x 437, 452 (6th Cir. 2016); *Mallory v. Ohio Univ.*, 76 Fed. App'x 634, 641 (6th Cir. 2003) ("To support a selective enforcement claim," the male plaintiff must allege "that a female was in circumstances sufficiently similar to his own and

was treated more favorably by the University"). "Under either theory, [a] [p]laintiff must . . . prove that 'the complained-of conduct was discriminatory.'" *Prasad v. Cornell Univ.*, No. 5:15-cv-322, 2016 WL 3212079, at *14 (N.D.N.Y. Feb. 24, 2016) (citing *Yusuf*, 35 F.3d at 715). Plaintiff cannot demonstrate a triable issue on a claim for erroneous outcome or selective enforcement.

## IV. Rollins did not materially breach an implied in fact contract

It is well settled in Florida that the relationship between a student and a private educational institution is solely contractual in nature. *Stetson Univ. v. Hunt*, 102 So. 637 (Fla. 1925); *Sharick v. Se. Univ. of Health Scis., Inc.*, 780 So. 2d 136 (Fla. 3d DCA 2000). The educational institution "may set forth the terms under which it will admit and subsequently graduate students who subject themselves to the rules, regulations, and regimen of the [school]." *Sirpal v. Univ. of Miami*, 509 Fed. App'x 924, 929 (11th Cir. 2013) (quoting *Univ. of Miami v. Militana*, 184 So. 2d 701 (Fla. 3d DCA 1966)). These terms are generally derived from the school's publications at the time of enrollment, such as the student handbook. *See Sirpal*, 509 Fed. App'x at 929 (citing *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008)); *see also Sharick*, 780 So. 2d at 138. However, the college or "university's publications are terms of an implied-in-fact contract rather than an express contract." *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1268-69 (S.D. Fla. 2004). "For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Smith v. Casey*, 1:12-CV-23795-UU, 2014 WL 11878422, at *4 (S.D. Fla. Oct. 29, 2014).

"A private university has broad discretion in what rules and regulations it shall issue and how it enforces its rules." *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006). The only way for a plaintiff to "defeat" the actions of a college or

{00369301 2 }                    24

university in dismissing him or her "is to show the actions of the [college or] [u]niversity were arbitrary and capricious." *Id.* "[A] decision is 'arbitrary' . . . if it is founded on prejudice or preference rather than on reason or fact." *Id.*

Plaintiff's breach of contract claim is based on processes and procedures that do not exist in the Policy, but that Plaintiff believes should have been included. However, the College "was not contractually bound to provide Plaintiff all of the administrative procedures he expected" and did provide Plaintiff with procedures that were outlined in its Policy. *Jarzynka v. St. Thomas Univ. Sch. of Law*, No. 03-20652-CIV, 2005 WL 8154066, at *9 (S.D. Fla. Aug. 24, 2005). The uncontroverted evidence shows that Rollins followed its policy and there was no material breach by the College. There is no evidence that Rollins' acted arbitrarily or capriciously in the Title IX investigation or in determining Plaintiff was responsible for violating its Policy.

## CONCLUSION

Defendant, Rollins College, requests this Court enter summary judgment in favor of Rollins College and against Plaintiff, John Doe, on all claims in the Amended Complaint.

Dated this 2 day of August, 2019.

Respectfully submitted,

ALEXANDER DEGANCE BARNETT, P.A.

By: _____
Mark G. Alexander
Florida Bar No. 434078
E-mail: mark.alexander@adblegal.com
Kelly DeGance
Florida Bar No. 0606022
E-mail: kelly.degance@adblegal.com
Samantha Giudici
Florida Bar No. 0058667
E-mail: samantha.giudici@adblegal.com
E-mail: mailbox@adblegal.com
1500 Riverside Avenue
Jacksonville, FL 32204
(904) 345-3277 Telephone
(904) 345-3294 Facsimile

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of this filing to: Joshua Adam Engel and Anne Tamashasky, Engel and Martin, LLC, 4660 Duke Drive, Ste 101, Mason, OH 45040 (engel@engelandmartin.com) and Bertha L. Burruezo and Carlos J. Burruezo, 941 Lake Baldwin Lane, Orlando, Florida 3281-6438 (bertha@burruezolaw.com; carlos@burruezolaw.com).

_____
ATTORNEY