**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>ROLLINS COLLEGE<br><br>Defendants | Case No. 6:18-cv-01069-RBD-KRS<br><br>Judge: Dalton, Jr.<br><br>SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S DAUBERT MOTION TO EXCLUDE TESTIMONY OF PROFESSOR PETER LAKE |

Plaintiff John Doe, respectfully submits this Supplemental Memorandum in Support of Plaintiff's Motion to Exclude the Expert testimony of Professor Peter Lake (Doc#58). The Court has requested supplemental briefing on the issue of the ability of Professor Lake to offer an opinion on his own training and policies he reviewed.

## RELEVANT FACTS

Plaintiff observes two categories of evidence, based on the testimony and exhibits presented at the November 6, 2019 evidentiary hearing, that bear on this Supplemental Memorandum.

First, in March 2014, Professor Lake submitted a Memorandum to Rollins College concerning his review of its Title IX process. One of the "Major Recommendations" was to switch to a single investigator model. (March 19, 2014, Observations and Suggestions from Rollins Visit (Plaintiff's Exhibit Tab 27).) Rollins followed this recommendation.[1] In 2017, Professor Lake conducted another

[1] It is important to note that Professor Lake made this recommendation not because he believed that the single investigator model was the best way to handle allegations of sexual misconduct on campus, but because of his belief that this was a preference of the Department of Education. He testified at this deposition:

> Q. …did you have a belief at that time that the single-investigator model led to more accurate and reliable investigations?

review of Rollins' procedures. In a summary he prepared afterwards, he praised Rollins for adopting his proposals, writing, "as we suggested, Rollins has moved from a hearing panel model to a single investigator model." (May 23, 2017 Observations and Suggestions from Rollins Visit (Attached as Exhibit G.)

*Second*, in offering opinions on the lack of bias in the Rollins trainings, Professor Lake relied on the allegedly unbiased nature of his own trainings. He offers this opinion in his Report:

> It is my view that Professor Johnson's opinions related to training at Rollins College lack sufficient foundation and are misleading precisely because he has not considered the breadth, depth, scope and purposes of training that agents of Rollins College have received. To the contrary, Rollins College and its agents were highly trained, including training on prompt and equitable procedures and the importance of impartiality in grievance procedures.

(Lake Report at 11 (Plaintiff's Exhibit Tab 4).) However, as was clear from Professor Lake's testimony, the only trainings he was substantively familiar with were his own. For example, Professor Lake was asked about the trainings attended by the investigator, Ms. Wallace, listed on in his report. (Lake Report at 9.) Professor Lake acknowledged: (i) that he provided, either by sponsoring or personally presenting, the majority of the trainings; and (ii) that he was not familiar with the content of the remainder of Ms. Wallace's trainings. This is significant because Professor Lake supports his opinions by repeatedly mentioning the allegedly unbiased context of his own trainings. (*See e.g.* Lake Report at 10 (claiming that the Title IX Coordinator and Investigator were "were provided my 2017

---

> A. My beliefs didn't matter. If the government said, "You should have this," then I was telling my clients that they should consider doing what the government wanted them to do.
> Q. Okay. I understand you -- you, respectfully, that the government doesn't believe your beliefs matter, but did you have an opinion in 2014 as to whether the single-investigator model led to more accurate and reliable investigations?
> A. I don't know that I have an opinion on that.

(Lake Deposition at 191.) As a result, if Professor Lake's testimony about this issue would simply be an opinion about whether the Rollins policy was in compliance with Title IX – but this would be an impermissible legal opinion.

Primer…"); Lake Report at 11 (claiming that the Title IX Coordinator and Investigator were "exposed to debates surrounding rape statistics and encouraged, *by me*, to view the relevant empirical data and studies impartially…") And, in regards to the trainings given by others to Rollins personnel, Professor Lake admitted at his deposition that he was not familiar with the content. In regards to the trainings materials contained in Tab 23 of Plaintiff's Exhibits, for example, Lake testified at his deposition:

> …I may have paged through this. I'm not -- I don't know this particular trainer, Chrysalis Network. I can't say that I know about them, so I don't -- I don't know anything about what actually happened in the room when this was given -- … or who these people are.

(Lake Deposition at 169 (Plaintiff Exhibits Tab 6).)

## ARGUMENT

The exclusion of Professor Lake could be accomplished under Rule 702 and the *Daubert* standards, as his testimony about matters where he was personally involved could be deemed inherently unreliable. As noted in Plaintiff's Motion, Professor Lake is not offering an opinion on whether Rollins has an unbiased system. Instead, Professor Lake is offering an opinion on whether the prior trainings and recommendations by Professor Lake were fair and equitable. In addition, Professor Lake's expert testimony could be excluded as inappropriately biased; allowing him to offer opinions under these circumstances would be unreliable under the *Daubert* standards and confusing and potentially misleading to the jury under the Evidence Rule 403 standard.

Professor Lake, Defendant suggested at the *Daubert* hearing, would serve as both a lay and expert witness. In that role, he would presumably testify about the content of the training provided to Rollins staff and investigator, and also offer an expert opinion about the lack of bias in the training. While there is no prohibition against a witness testifying as both an expert and a fact witness, "'courts must be mindful when the same witness provides both lay and expert testimony' because of the heightened possibility of undue prejudice." *United States v. Flores-de-Jesus*, 569 F.3d 8, 21 (1st Cir.2009), *quoting United States v. Upton*, 512 F.3d 394, 401 (7th Cir. 2008). The Eleventh Circuit has observed

that there is no binding precedent prohibiting a witness from testifying both as a fact and expert witness, and that the admission of such evidence is "left it to the discretion of the trial judge." *United States v. McCoy*, 333 F.App'x 502, 503 n. 1 (11th Cir.2009), *citing United States v. Flores-de-Jesus*, 569 F.3d 8 (1st Cir. 2009) ("[T]here is no prohibition against a witness testifying as both an expert and a fact witness[.] . . ."); *United States v. Freeman*, 498 F.3d 893, 904 (9th Cir. 2007).

In this case, permitting Professor Lake to give an opinion on the validity of his own conduct would be unreliable and unduly prejudicial. This would be comparable to permitting a party to serve as his/her own expert – a practice not generally permissible. *Van Assche v. Nevada*, D.Nev. No. 2:18-cv-02135, 2019 U.S. Dist. LEXIS 101688, at *3, n. 16 (June 11, 2019) ("courts almost never permit parties to serve as experts"), *citing Kranis v. Scott*, 178 F. Supp. 2d 330 (E.D. N.Y. 2002) (precluding plaintiff from testifying as own expert because, inter alia, he had "been personally involved at every level of the instant action and his role as past defendant, current plaintiff, attorney and expert witness would be unfairly prejudicial, misleading and confusing to the jury"). Plaintiff has found one case with similar facts: *Wilson v. Taser Internatl., Inc.*, N.D.Ga. No. 4:06-CV-0179, 2007 U.S. Dist. LEXIS 96168 (Aug. 29, 2007). In *Wilson,* the court limited the expert opinions offered by "dual" witnesses regarding the adequacy of training. The defendant in that case sought to have its Vice President of Training testify as both a fact and expert witness regarding Defendant's training program and other training programs. The court permitted the fact based-testimony concerning Defendant's training program and other training programs, but prohibited under a *Daubert* analysis the testimony as an expert witness. 2007 U.S. Dist. LEXIS 96168 at *19-20. *See also Sorrentino v. Wexford Health Sources, Inc.*, 2019 U.S. Dist. LEXIS 172601 *, 2019 WL 4918142 (N.D. Ill. October 4, 2019) (noting that proposed witnesses were "fact witnesses in this case, and thus are not qualified to offer opinions as to the reasonableness of their own conduct"); *CDX Liquidating Trust v. Venrock Assocs.*, 411 B.R. 591, 603-604 (N.D.Ill.2009) (precluding witnesses from testifying regarding compliance with legal standards;

"The witnesses will be permitted to characterize their own conduct but are barred from rendering opinions on the conduct of others.").[2]

Plaintiff has not been able to find any other cases directly addressing the issue presented by Professor Lake's unique role in this matter. However, the Court should consider whether Professor Lake's unique dual role creates an impermissible financial incentive. Testimony from experts who have a direct financial stake in the outcome of litigation is "against public policy…" *Accrued Fin. Svcs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 300 (4th Cir. 2002). While experts are commonly compensated for their time and opinions, courts, based on public policy, have distinguished between paid experts who have an indirect incentive to win the approval of their employers (the client and attorneys) and experts who have a direct financial stake in the outcome of the litigation on the other. *Compare e.g. Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass 'n*, 865 F. Supp. 1516, 1518-26 (S.D. Fla. 1994) (holding that payment of fact witnesses "unquestionably violated the very heart of the integrity of the justice system" and excluding testimony of witnesses), aff'd in part, 117 F.3d 1328 (11th Cir. 1997). Thus, if an expert obtains a financial interest in the outcome of the litigation, the concept of independent intellectual rigor that normally adheres to an expert witness disappears. Where the conflict of raises "serious questions about the integrity of [the witnesses'] expert testimony," the admission of the conflicted testimony would violate public policy. *Straughter v. Raymond*, C.D.Cal. No. CV 08-2170, 2011 U.S. Dist. LEXIS 53195, at *12 (May 9, 2011) (excluding expert witness with a "*de facto* contingency fee arrangement). In this case, while Professor Lake presumably will be paid regardless of the outcome of this case, his work as a consultant and attorney would directly suffer from an adverse ruling in this case. This, coupled with his past financial relationship with Defendant,

---

[2] *But see e.g. Hammond v. Hendrickson,* N.D.Ill. No. 85 C 9829, 1990 U.S. Dist. LEXIS 15039, at *7 (Nov. 6, 1990) ("we do not believe that the jury will have any difficulty understanding the significance" and witnesses' opinions "regarding their own conduct in this matter").

undermines his independence. This is not hard to see; it is hard to imagine many institutions continuing to hire Professor Lake as a consultant or an attorney if the jury rejects the recommendations and training he was previously paid to provide.

## CONCLUSION

The Testimony of Professor Lake should be excluded or limited under *Daubert* principles.

Respectfully submitted,

/s/ Joshua A. Engel
Carlos J. Burruezo, Esq. (#843458)
carlos@burruezolaw.com
Bertha L. Burruezo, Esq. (#596973
bertha@burruezolaw.com
941 Lake Baldwin Lane, Suite 102
Orlando, Florida 32814
Office: 407.754.2904
Facsimile: 407.754.2905

JOSHUA ADAM ENGEL (Ohio 0075769)
ANNE TAMASHASKY (Ohio 0064393)
*Special Admission*
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com
tamashasky@engelandmartin.com

## CERTIFICATE OF SERVICE

This certifies that the foregoing was filed electronically on November 11, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ Joshua Engel
Joshua Adam Engel (Ohio No. 0075769)
(*pro hac vice*)