UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN DOE,

Plaintiff,

v. Case No. 6:18-cv-1069-Orl-37LRH

ROLLINS COLLEGE,

Defendant.

______________________________________

# ORDER

Before the Court are Plaintiff's Daubert Motion to Exclude Testimony of Professor Peter Lake (Doc. 58) and Defendant's Motion to Exclude Testimony of Plaintiff's Expert Witness (Doc. 62) (collectively, "**Motions**"). Each side opposes. (Docs. 67, 69.) The Court held hearings on the Motions and directed the parties to file supplemental briefings. (*See* Docs. 93–96.) On review, the Motions are granted in part—both experts may testify for a limited purpose.

## I. BACKGROUND

Plaintiff John Doe ("**Doe**") sued Defendant Rollins College ("**Rollins**") for breach of contract and Title IX violations after Rollins found Doe violated its sexual misconduct policy, resulting in disciplinary sanctions. (Doc. 14.) Doe argues Rollins felt pressure to adopt a discriminatory sexual misconduct policy after the U.S. Department of Education issued the "Dear Colleague Letter" to colleges across the country, encouraging prompt and equitable procedures to address sexual misconduct in compliance with Title IX. (*See*

Doc. 14, ¶ 67; *see also* Doc. 61-12.) The Dear Colleague Letter was withdrawn in 2017 after criticisms of the letter as imposing improper pressure on colleges at the expense of fundamental fairness in sexual misconduct procedures. (*See* Doc. 56, p. 2.)

Against this Title IX background, Doe hired Professor KC Johnson as an expert witness to opine on the history of Title IX, including the Dear Colleague Letter, and to describe how Rollins's sexual misconduct procedures are gender biased. (*See* Docs. 63-1, 63-2.) Professor Johnson is a history professor who found his way to Title IX through a blog on the Duke Lacrosse case[1] and since then has been looking at the filings and discovery of hundreds of lawsuits in which students sue their schools after sexual misconduct proceedings. (Doc. 63-1, pp. 1–2.) He compared this case to the lawsuits he reviewed and concludes Rollins's procedures are unfair and gender biased. (*Id.* at 1.) Rollins moves to exclude Professor Johnson because he is not qualified and does not use a reliable methodology. (Doc. 62.)

Rollins contends its procedures are gender neutral and presents Professor Peter Lake to rebut Professor Johnson. (*See* Docs. 58-1, 89.) Professor Lake has an academic background in higher education law and Title IX and was a Title IX director. (Doc. 58-2, p. 3.) Professor Lake opines that based on his experience, Rollins's handling of Doe's case does not show gender bias or unfairness. (*See* Doc. 58-1.) Doe moves to exclude Professor

---

[1] The Duke Lacrosse case involved rape allegations against multiple Duke University students on the lacrosse team in 2006, who were ultimately exonerated. *See* Justin Block, *10 Years Later, the Duke Lacrosse Rape Case Still Stings*, Huffington Post (Mar. 11, 2016), https://www.huffpost.com/entry/duke-lacrosse-rape-espn-30-for-30_n_56e07e33e4b065e2e3d486f7.

Lake because his testimony is unreliable, he is biased, and he improperly offers legal opinions. (Doc. 58.) With the briefings and hearings, the Motions are ripe. (*See* Docs. 58, 62, 67, 69, 93–96.)

## II. LEGAL STANDARDS

In its gatekeeping role, a district court is tasked to ensure that juries hear "expert" opinions that satisfy these requirements:

> **Qualifications**—a witness that is "qualified as an expert by knowledge, skill, experience, training, or education" may testify as to his opinions of scientific, technical, or other specialized knowledge (Fed. R. Evid. 702) ("**Qualification Requirement**");
>
> **Reliability**—the testimony is "based on sufficient facts or data" (Fed. R. Evid. Rule 702(b)) and "is the product of reliable principles and methods" (Fed. R. Evid. Rule 702(c)), which the witness applied "reliably . . . to the facts of the case" (Fed. R. Evid. Rule 702(d)) ("**Reliability Requirement**"); and
>
> **Helpfulness**—the testimony will help the jury to "understand the evidence or to determine a fact in issue" (Fed. R. Evid. Rule 702(a)) ("**Helpfulness Requirement**").

*See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562–63 (11th Cir. 1998); *see also Cooper v. Marten Transp., Ltd.*, 539 F. App'x 963, 965–67 (11th Cir. 2013).[2] The Court must abstain from credibility determinations and any merits assessment of an expert witness's opinion—matters exclusively reserved to juries—and must instead narrowly focus on whether the proponent of the expert witness has established the Qualification, Reliability, and Helpfulness Requirements. *See Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 594–

[2] While unpublished opinions are not binding precedent, they may be considered persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

95 (1993); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 155 (2000).

To determine whether the Qualification Requirement is met, "courts generally look to evidence of the witness's education and experience" and determine whether those qualifications and expertise sufficiently "fit" with "the subject matter of the witness's proposed testimony." *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1367 (M.D. Ga. 2010) (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)).

A determination on the Reliability Requirement involves several considerations that vary depending on the opinions and testimony, including these well-known *Daubert* factors:

> (1) whether the expert's theory can be or has been tested;
>
> (2) whether the theory has been subject to peer review and publication;
>
> (3) the known or potential rate of error of the particular scientific technique; and
>
> (4) whether the technique is generally accepted in the scientific community.

*Daubert*, 509 U.S. 579; *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004). These "factors are only illustrative and may not all apply in every case." *United States v. Abreu*, 406 F.3d 1304, 1307 (11th Cir. 2005) (citing *Frazier*, 387 F.3d at 1262). The district court has "wide latitude in deciding how to determine reliability." *Id.* (citation omitted).

Finally, the Helpfulness Requirement turns on:

> the common sense inquiry [of] whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment

> from those having a specialized understanding of the subject involved in the dispute.

*See* Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules (citation omitted).

The proponent of the expert opinion must establish admissibility. *See Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)); *see also Frazier*, 387 F.3d at 1260. The proponent need not prove that the opinion is scientifically correct, just that it is reliable and helpful. *See Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1279 (M.D. Fla. 2002) (citation omitted). If the proponent does so, then the court should permit the proponent to elicit testimony from the expert witness about his or her reliable opinions and allow the jury to fulfill its role of determining the weight to accord that testimony. *See id.* at 1278–79. The court's limited gatekeeping role "is not intended to supplant" presentation of contrary evidence or cross-examination. *See United States v. Ala. Power Co.*, 730 F.3d 1278, 1282–85 (11th Cir. 2013) (citation omitted). Once the proponent satisfies the minimum threshold for admissibility, the jury must decide the parties' remaining reliability and relevance disputes—preferably based on the litigants': (1) presentation of contrary evidence, such as testimony from the litigant's own expert witness; and (2) use of cross-examination and appropriate legal argument. *See id.*

## III. Analysis

Let's start with Professor Johnson's ability to serve as an expert in this case since Professor Lake is offered in rebuttal.

**A. Professor KC Johnson**

Rollins challenges Professor Johnson's ability to testify that Rollins's sexual misconduct procedures and training were unfair and gender biased because he is not qualified and does not use a reliable methodology. (*See* Doc. 62; *see also* Doc. 63-1.) Doe says Professor Johnson is qualified and uses a reliable methodology for non-scientific testimony. (*See* Doc. 69.) Rollins also argues Professor Johnson's testimony on the history of Title IX is irrelevant. (Doc. 62, pp. 5, 7–9.) Doe counters this testimony will help the trier of fact. (Doc. 69, pp. 11–14.) On review, Professor Johnson may not testify as to fairness and gender bias of Rollins's procedures, but he may testify regarding the history of Title IX.

A thorough reading of *Stick and Rudder, An Explanation of the Art of Flying,* helpful as it might be to the aspiring or even accomplished pilot, would hardly qualify one to opine on the standard of care associated with landing an F-18 Hornet on the rolling deck of an aircraft carrier.[3] Professor Johnson's background is not in gender discrimination. Professor Johnson teaches history at Brooklyn College and the CUNY Graduate Center. (Doc. 63-3, p. 1.) He received his master's degree in history from the University of Chicago and his bachelor's degree and Ph.D. in history from Harvard University. (*Id.*) He began writing about Title IX in a blog about the Duke lacrosse case. (*Id.* at 2.) Since then, he has been collecting and studying cases in which accused students sue their colleges for defective procedures in sexual misconduct proceedings. (*See id.* at 1.) He has co-authored

---

[3] *See* Wolfgang Langewieche, *Stick and Rudder* (McGraw-Hill, Inc. 1944).

two books about these cases which federal courts have cited. (Doc. 63-3, p. 1; Doc. 63-1, p. 2; Doc. 69, p. 7.)

The critical question here is fit. Does Professor Johnson's education or experience fit the subjects in his expert report? *See In re Mentor Corp.*, 711 F. Supp. 2d at 1367. It doesn't. Professor Johnson wants to compare this case to the hundreds of other Title IX lawsuits he reviewed and opine that the way Rollins treated Doe was unfair and gender biased. (*See* Doc. 63-1, p. 1.) But Doe has failed to show Professor Johnson is qualified to reach such conclusions on fairness or gender bias by comparing past lawsuits against these facts. (*See id.* at 1–2.) Without training or experience in these areas, Professor Johnson isn't qualified to testify about them. *See Am. Gen. Life & Accident Ins. Co. v. Ward*, 530 F. Supp. 2d 1306, 1313 (N.D. Ga. 2008) (disqualifying a proposed handwriting expert with experience but who wasn't certified in document examination); *see also Jacobson v. R.J. Reynolds Tobacco Co.*, No. 1:12-cv-23781-UU, 2013 WL 12094860, at *1 (S.D. Fla. Sept. 20, 2013) (explaining an expert may be a "historian of science, but . . . not a scientist"). Exposure to numerous lawsuits is not enough. *See Memphis-Shelby Cty. Airport Auth. v. Illinois Valley Paving Co.*, No. 01-3041 B/An, 2006 WL 5981486, *2–3 (W.D. Tenn. July 21, 2006) (explaining a proposed expert's exposure to cables did not give him specialized knowledge about the cause of cracked cables). Professor Johnson's background and experience do not fit the subjects he opines on—namely the gender bias and fairness of Rollins's procedures. *See Fair Hous. Ctr. of Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n, Inc.*, No. 9:14-CV-80667-ROSENBERG/BRANNON, 2015 WL 5016836,

at *1 (S.D. Fla. Aug. 25, 2015) (finding a historian was not qualified to make medically based conclusions).[4]

That's not to say Professor Johnson isn't qualified as an expert on anything in his report. Professor Johnson's experience and education lie in history. Given his background, Professor Johnson's research into Title IX qualifies him to describe the history of the statute. *See Walden v. City of Chicago*, 755 F. Supp. 2d 942, 950–51 (N.D. Ill. 2010) (finding a historian qualified to testify on the history of the subjects he researched). Rollins doesn't challenge his qualifications for this, stating Professor Johnson "arguably *may* be an expert [in] the history of Title IX." (Doc. 62, p. 5.) The Court agrees.

Rollins offers a different basis to exclude Professor Johnson's Title IX history testimony: it is not relevant to the claims in this case and thus not helpful to the jury. (*Id.* at 5, 7–9.)[5] Rollins says part of the history Professor Johnson seeks to explain, increased Title IX pressure on colleges though the Dear Colleague Letter, doesn't apply because it was not subject to any investigations into its Title IX process and there is no evidence of "indirect" pressure on Rollins's handling of Doe's sexual misconduct case. (*Id.* at 8.) But alleged pressure to comply with Title IX is still in dispute. (*See* Docs. 56, 60, 67, 72, 75, 76.)

---

[4] The Court does not reach Rollins's challenge to Professor Johnson's methodology since it has established he isn't qualified to opine on gender bias and fairness of Rollins's procedures. *See* Fed. R. Evid. 702; *see also Beam v. McNeilus Trauck and Mfg., Inc.*, 697 F. Supp. 2d 1267, 1278 (N.D. Ala. 2010) (finding a discussion of reliability and helpfulness unnecessary where proposed expert was not qualified).

[5] In its argument heading, Rollins challenges Professor Johnson's "Legal Policy and Background" section of his report as irrelevant, containing inadmissible hearsay, unreliable, and unhelpful. (Doc. 62, p. 7.) But Rollins only briefs argument for relevancy, so the Court only addresses that challenge. (*See id.* at 7–9); *see also* Local Rule 3.01(a) (requiring support for relief requested).

Doe has alleged Rollins was affected by the Dear Colleague Letter and criticisms from the student body and public. (*See* Doc. 14; *see also* Doc. 38, pp. 6–10.) Professor Johnson's summation of the history of Title IX could help a jury determine whether Rollins's conduct following the Dear Colleague Letter reflects pressure to handle sexual misconduct cases in a discriminatory way. This is relevant to Doe's claims. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1347 (11th Cir. 2003) (finding testimony relevant under *Daubert* because it was "related to an issue in [the] case"). Professor Johnson will be limited to testifying as an expert on the history of Title IX, as covered in his expert report. (*See* Doc. 63-1, pp. 5–7.)

**B. Professor Peter Lake**

As Professor Johnson may testify on the history of Title IX, let's address whether Professor Peter Lake can rebut that testimony.[6] Doe argues Professor Lake is unreliable because he's biased in favor of Rollins, his opinions on Rollins's training are contradicted by the record, his support of the single investigator model is contrary to what's accepted in the field, and he inappropriately offers legal opinions. (*See* Doc. 58, pp. 4–13.) Rollins counters Plaintiff's issues should be addressed during cross-examination, the single investigator model is widely accepted, and any legal opinions are only offered to rebut Professor Johnson. (*See* Doc. 67.) On review, Professor Lake may testify as a rebuttal expert on the history of Title IX.

[6] Rollins has represented if Professor Johnson is excluded, then Professor Lake will not testify as an expert. (*See* Docs. 93, 95.) Since Professor Johnson's testimony is limited to the history of Title IX, the Court expects Professor Lake will be offered to rebut that testimony.

None of Doe's arguments for exclusion apply to Professor Lake's opinion on the history of Title IX. The Court, and perhaps Doe since it wasn't briefed, is unconcerned about Professor Lake's ability to testify on the history of Title IX. (*See* Doc. 58.) Professor Lake has an extensive background in Title IX as an academic and former Title IX director. (*See* Doc. 58-1, p. 3); *see also In re Mentor Corp.*, 711 F. Supp. 2d at 1367. Like Professor Johnson, he reviewed Title IX historical materials and his rebuttal testimony will be helpful to the jury in understanding the Title IX background from Rollins's perspective. (*See* Doc. 58-1, pp. 2–3); *see also Lord*, 223 F. Supp. 2d at 1279. While Professor Lake may rebut Professor Johnson's testimony on the history of Title IX, he is cautioned that he must stick to what he provided in his report. (*See* Doc. 58-1.)

Both experts may testify on the history of Title IX. This does not include whether Rollins complied with the law, regulations, or guidance. It only includes the general legal and regulatory landscape of Title IX, to the extent it's addressed in their respective reports.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Daubert Motion to Exclude Testimony of Professor Peter Lake (Doc. 58) is **GRANTED IN PART AND DENIED IN PART**.
2. Defendant's Motion to Exclude Testimony of Plaintiff's Expert Witness (Doc. 62) is **GRANTED IN PART AND DENIED IN PART**.
3. Professor KC Johnson and Professor Peter Lake may testify as experts on the history of Title IX as addressed in their expert reports only.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 7, 2020.

ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record